UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN DOE                                  :
                                          :
                        Plaintiff,        :      CIV. NO:  3:00CV2167 (JCH)
v.                                        :
                                          :
BRIDGEPORT POLICE                         :
DEPARTMENT, ET AL                         :
                                          :
                        Defendants        :      OCTOBER 26, 2005

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO THE PLAINTIFFS' MOTION AND MEMORANDUM FOR CONTEMPT

### I.    INTRODUCTION

By way of Motion dated September 27, 2005, the Plaintiffs request that this Court make a finding that the Defendants have violated the Order of the Court entered on January 18, 2001.  The Plaintiffs contentions are contrary to the evidence and efforts of the City of Bridgeport through its Police Department and Health Department to operate the Needle Exchange Program within the bounds of the law and in accordance with the January ruling of this Court.

The Plaintiffs' Motion has been submitted to this Court despite the fact that the Plaintiffs, through counsel, agree that: (1) prior to the August 15th date, there

**ORAL ARGUMENT REQUESTED**

BMF05119                                  1

have been no complaints provided to the Police Department or the Director of Health to provide any notice to the City of potential violations;  (2) that the clientele of the Program have refused to follow the civilian complaint process sanctioned by the Federal District Court and known as  a Barros complaint;  (3) that the alleged violations involved actions that are vehemently denied by the Defendants;  (4) that the Plaintiffs reliance upon the Order is to shield any client of the Program from arrest for other crimes relating to the sale, possession and control of narcotic substances or other drug paraphernalia;  and (5) that the Defendants immediately addressed the concerns of the Plaintiffs despite the fact that the Plaintiffs refused to provide specific information as to the alleged violations or to accept the Defendants' invitation to offer any suggestion to teach, monitor, control or discipline officers in relation to the enforcement of the January, 2001 Court ruling.

As a result of Plaintiffs' allegations, the Defendants have initiated additional efforts to be certain that the intent of the Needle Exchange Program and the Order of the Court can be accomplished while, at the same time, not interfering with the responsibilities and obligations of law enforcement to be vigilant in preventing crime and creating safe neighborhoods free from illegal narcotics (Exhibit A – Affidavit of Chief Armeno;  Exhibit B – Affidavit of Barbara Brazzel-Massaro).

The Defendants request that, based upon the limited specificity of the affidavits, the extended hearsay, the exhibits and the action of the City to address the claims set forth herein, the Court deny the Plaintiffs' Motion for Contempt.

## II.     ARGUMENT

### A.     General Standard

The Plaintiffs have requested, as an avenue of relief, that this Court award the Plaintiffs monetary relief, including attorney fees.  Based upon the relief requested, it is clear that the Plaintiffs are requesting civil contempt.  Civil contempt is intended to "coerce the defendant into compliance with the court's order [or] . . . to compensate the complainant for losses sustained."  United States v. The United Mine Workers of America, 330 U.S. 258, 303-04 (1994) and New York State Org. for Women v. Terry, 886 F.2d 1339, 1351 (2nd Cir. 1989) ("a sanction imposed to compel obedience to a lawful court order or to provide compensation to a complaining party is civil.").  "Consistent with this remedial purpose, the sanction imposed is generally made contingent upon compliance."  In re Irving, 600 F.2d 1027, 1031 (1979);  citing among other cases Shillitani v. United States, 384 U.S. 364, 370 (1966).  "This is often accomplished by a purgation provision whereby a civil contemnor may purge himself of contempt at any time by compliance."  In re Irving, supra at 1031.  Canterbury Belts Ltd. v. Lane Walker Rudkin Ltd, 869 F.2d 34, 39 (2nd Cir. 1989).  The fact that the sanction must serve to either coerce

compliance with the Court's order or to compensate the Plaintiffs for their actual losses, however, remains unchanged.  As to Plaintiffs' allegations of civil contempt, the Defendants contend that there is no basis for such a finding, as argued herein.

The Court's inherent power to hold a party in civil contempt may be exercised only when:  (1) the order the party allegedly failed to comply with is clear and unambiguous;  (2) the proof of non-compliance is clear and convincing;  and (3) the party has not diligently attempted in a reasonable manner to comply.  <u>United States v. Local 1804-1 International Long Shoreman's Association AFL-CIO</u>, 44 F.3d 1091, 1096 (2nd Cir. 1995).

With respect to the Plaintiffs' allegations and the law, none of the criteria has been or can be established.

The first criteria of the civil contempt is that the Order is clear and unambiguous.  This has been defined as "one that leaves no uncertainty in the minds of those to whom it is addressed.  The police officers must be able to decipher how to comply with the order from the four corners of the Order.

The second criteria requires that the Plaintiffs establish, by clear and convincing evidence, that the Order was clear and there is noncompliance.

Lastly, the Plaintiffs must demonstrate that the Bridgeport Police Department and Chief Anthony Armeno have not attempted to comply with the Court Order.  In this regard the Defendants have not only denied the allegations raised in the

4

Plaintiffs' memorandum with attachments, but also have submitted affidavits that demonstrate swift and reasonable efforts by the Bridgeport Police Department and its Chief of Police to investigate and alleviate the claims of the various unidentified individuals (see Exhibit A – Affidavit of Chief Armeno;  Exhibit B – Affidavit of Barbara Brazzel-Massaro;  and Exhibit C – Exhibit of Captain Radzimirski).

Given the nature of the Plaintiffs' claims, and as specifically addressed below, there is no basis to find the Defendants are in contempt of this Court's Order of January, 2001.

### B.    Interpretation of the Court Order

On January 18, 2001, the Court entered the following Order:

Defendants Bridgeport Police Department and Wilber L. Champan, Chief of the Bridgeport Police Department, their agents, employees, assigns, and all persons acting in concert or participating with them are enjoined and restrained from searching, stopping, arresting, punishing or penalizing in any way, or threatening to search, stop, arrest, punish or penalize in any way, any person based solely upon that person's possession of up to thirty sets of injection equipment, within the scope of Conn. Gen. Stat. § 21a-240(20)(A)(ix), whether sterile or previously-used, or of a trace amount of narcotic substances contained therein as residue.

This Order summarizes the extensive analysis by this Federal Court of the Connecticut state law that provides a program to give participants the legal right to possess a specified number of needles and/or syringes.  The City of Bridgeport,

consistent with the law, administers the Needle Exchange Program and provides hypodermic needles and/or syringes to clients.

In the January 18, 2001 Memorandum the Court noted the argument of the Plaintiffs is that the Defendants arrested and harassed drug users in Bridgeport "solely on the basis of the users' possession of hypodermic syringes and needles, whether sterile or previously-used." (Memorandum at page 7). The factual allegations, as well as the legal dispute, was different than the instant allegations and facts before the Court. In the 2001 Memorandum, this Court identified the question of law before it as: "whether the defendants violate injecting drug users fourth amendment rights by arresting them solely for the possession of less than thirty-one hypodermic syringes or needles, whether sterile or previously-used, or for the possession of trace amounts of narcotic substances contained therein as residue" (Memorandum at page 13). The Court later, in the opinion, redefines the issue as "whether it is legal for any injecting drug user, whether a participant in the Exchange or not, to possess not only previously used hypodermic syringes and needles in quantities less than thirty-one, but also to possess any trace amounts of narcotic substances contained therein as residue (Memorandum at pages 21-22). The appearance by the parties in 2000-2001 before the Court focused on two concerns. The first was the fact that narcotic residue was found in hypodermic needles and syringes on persons carrying less than 31 needles and because of the

BMF05119

narcotic substance they were arrested for possession of narcotics, and the second concern was the co-existence of police enforcing the narcotics law and arresting for "solely" hypodermic needles and syringes while trying to aid in the prevention of disease through the Needle Exchange Program. Of importance in this concern was the Court's effort to interpret and harmonize the laws addressing the distribution of needles and syringes for drug users with the criminal law concerning illegal narcotics. These issues have been addressed by the Court. However, the Plaintiffs have carried their interpretation to a different level in this action. The interpretation was never enunciated to expand the law involving possession of "solely hypodermic needles and syringes" to any drug paraphernalia such as "cookers" or crack pipes that are confiscated. In situations where the main thrust of the arrest is brought about for other criminal violations, such as motor vehicle violations, loitering, obstructing free passage, creating a disturbance, or possession of other drug paraphernalia such as crack pipes, straws, mirrors, cookers, baggies with residue, the arrest has not been interpreted as "solely" for possession of hypodermic needles and syringes. Additionally, such an interpretation would not make sense. The law permitting the possession of the hypodermic needles and syringes was enacted to prevent drug users from sharing or improper disposal of previously used hypodermic needles and syringes. This was enacted to prevent the spread of disease. The whole intent was a public health issue concerning the spread of HIV and other

blood-borne diseases.  It was never the intent that the law provide an authorization and approval to engage in uncontrolled and illegal drug use.  The court, in it's Memorandum, refers very specifically to the focus on the hypodermic needles and syringes that are given to individuals in the Program, as well as sold by pharmacies, to individuals to prevent the spread of disease (Memorandum at pages 52-60).  Therefore, the Plaintiffs' present interpretation of the Court Order is not consistent with the original action or the facts reviewed by the Court.  This creates a misinterpretation of the Court Order that the Defendants contend places added restrictions on their ability to perform their job.

**C.**    **The Actions Of The Police Officers In Stopping Or Arresting For A Multitude Of Narcotics Offenses Is Not A Clear Violation Of The Order Of The Court**

The Order entered by the Court on January 18, 2001 specifically refers to the stopping, searching, and arresting solely for the possession of injection equipment.  As the Defendants stated above, the Court thoroughly reviewed these State laws in reference to the Needle Exchange Program that provides hypodermic needles and syringes.  The Plaintiffs contend that the officers of the Bridgeport Police Department have violated this Order based upon the declarations of a number of John Does and John Roes.  The declarations submitted by the Plaintiffs contain information which cannot be verified because they are so nebulous as to time and/or officer(s) involved.   The  information  relayed  in  the  declarations  in  some  instances

demonstrates that they are not accurate when compared to the evidence specifically available to the Defendants or the state of the law.

For instance, Mr. John Roe 2 seems to be under the impression that he can possess a "cooker" as well as the needles.  There is nothing in the Memorandum of the Court that extended the legally protected hypodermic injection equipment to include "cookers" or "crack pipes" or any other miscellaneous equipment associated with drug offenses (Declaration of John Roe).  Additionally, in the declaration of Mr. John Roe he states he was just standing outside with a "few friends".  Unfortunately, this location is a high drug trafficking area.  The  statement of Mr. Roe supports the Defendants contention that the basis for the stop sometime in 2005, whether morning, afternoon or night, was not specifically related to the Needle Exchange Program but appears to be a loitering problem in a high drug traffic area.

The affidavit of John Roe 2 indicates that the "police would always seem to be near the van."  This view of police presence is misdirected and may be a little paranoid because the are he refers to has what is termed a "walking" patrol, as well as a patrol car, which makes the officers visible in the area (Exhibit E – Affidavit of Gallant).  They always seemed to arrest people for possession of paraphernalia who were on probation or parole."  The 42 Freedom of Information documents provided to counsel obviously do not support this because only 2 reports have been disclosed by the Plaintiffs with one involving a park police officer and the other by an officer

when the individual was suspected of other criminal violations including carrying a bag thought to be narcotics (Exhibit D - Affidavit of James Kirkland; Exhibit E – Affidavit of John Gallant). Mr. John Roe 2 also refers to hearsay about personal grudges with van staff, yet the declaration of the van driver, Mr. Tracey, does not support this hearsay statement. Mr. Tracey's declaration statement also does not support the claims of being cuffed and transported by an officer(s) because there are no arrest reports that demonstrate this as an ordinary occurrence.

Likewise, the affidavit of John Roe 6 refers to walking down a sidewalk with a "couple of guys" and being stopped. He does not indicate that he was stopped for harassment because he was a client of the van and he does not indicate that the purpose was to take his needles. The declaration also indicates he had a "clean cooker" on him that was taken. The same person discusses a second occasion when he was stopped for a motor vehicle violation, not because he was a client of the Needle Exchange Program. It appears that these stops had no connection to the Needle Exchange Program except by coincidence that these individuals were clients.

The Memorandum of this Court does not exempt any other drug paraphernalia under the Program other than "hypodermic syringes and needles" (Memorandum of Decision at Pages 44, 45, 46, 47 and 48). In fact, the Program distributes only the hypodermic needles and syringes. Therefore, when equipment

other than hypodermic needles is located, neither the statute nor the Court Order are violated with a stop, search, or arrest. What is significant in many of the declarations is that a stop or investigation was not made while the individual was engaged in or even in the van. For instance, Mr. Doe was in his car after leaving the Bridgeport Health Department and was stopped in his automobile. Mr. Doe assumed that he was stopped because he was at the exchange but there is not sufficient evidence to demonstrate that this was the situation. It is unusual that during the month of January, 2004, with a number of clients to the various locations, that only Mr. Doe was stopped after he was two blocks away from the van. Additionally, John Roe was with a group of friends on State Street. Mr. John Roe 4 was simply stopped in his car and Mr. John Roe 5 was on his bicycle. None of the individuals can give specific information so that the Court or the Defendants can determine whether the stops were based upon factors outside of the possession "solely" of hypodermic needles, but the facts leading to the arrest tend to support other factors outside the Court restriction for arrests.

The Defendants vehemently deny that individuals are stopped, searched, or arrested "solely" for the possession. It is noteworthy that in over 3½ years there are seven individuals with no specific information claiming violations. Additionally, three of the individuals signed declarations over a year ago and the counsel for the Plaintiffs never attempted to submit them to the Court or the Defendants. The

withholding of these declarations was prejudicial to the Defendants.  The failure to provide these declaration in a timely manner is viewed as suspect by the Defendants who are unable to verify and possibly correct any statements.[1]

Therefore, the Defendants contend that without an opportunity to address the allegations, and based on the affidavits submitted by the officials for the City of Bridgeport, there cannot be a finding of a clear violation of the Order of this Court.

### D.    The Bridgeport Police Have Immediately Addressed The Allegations In A Reasonably Diligent Attempt To Comply

An Order to grant a Motion to Compel on a civil contempt requires some ongoing non-compliance.

The last aspect of the Court's review requires that the Bridgeport Police Department has not diligently attempted, in a reasonable manner, to comply.  New York State v. Terry, 886 F.2d 1339 (1989).  Even if this Court determines that at some time a Bridgeport police officer may have acted questionably in confiscating or destroying needles of clients of the Needle Exchange Program, the lack of evidence of complaints to anyone in authority for the past almost 4 years and the Defendants swift, extensive actions to assure compliance with the Court's ruling upon notice

---

[1] It is interesting that only 2 police reports have been submitted which reports do not support the Plaintiffs' position.  (See affidavits of James Kirkland - Exhibit D and John Gallant – Exhibit E.)  Also, Defendants anticipate scheduling depositions of the declarants to obtain more information to aid them in their efforts to determine if further disciplinary action is necessary and to determine if there is a violation, as alleged by the Plaintiffs.

satisfies the criteria for denying the Motion to Comply.  Additionally, the Plaintiffs' inability to provide even a single measure to rectify or prevent the alleged violations demonstrate that the swift action of the Bridgeport Police Department has corrected any alleged non-compliance.

In this last criteria there are two factors that, on the one hand, support the Defendants' rationale that the Court should deny the Motion but also, on the other hand, demonstrates that the Plaintiffs have not, in good faith, attempted to correct the alleged behavior and to protect their clients  but, instead, come to this Court looking to be compensated.

The first factor is that during the month the City was made aware of the allegations, the Plaintiffs would not provide to the Bridgeport Police Department, or its representatives, concrete information to help them pinpoint what the Plaintiffs describe as violations in an effort to help the Department take corrective actions. The declarations provided to this Court in support of the Plaintiffs' allegations were not provided to the Defendants prior to the filing of this Motion.  However, even these declarations provide only minimal information to address the inquiries by the City officials to help them specify and correct the alleged problem.  Some of the declarations are over a year old and are so nebulous that the Bridgeport Police Department could not specifically investigate and correct any alleged violation.  For instance, the most recent declarations give broad time tables such as Winter 2004-

2005 or Spring 2005, or no time frame except to provide hearsay information (John Doe 2). None of these individuals complained of police action until they were approached by counsel to give a declaration. Not one civilian complaint was filed (Exhibits A, C and F Affidavits of Chief Armeno, Captain Radzimirski, Lieutenant Porter). What is even more horrendous is that each of the three John Doe declarations are dated early 2004 (March 26, April 2 and April 30), yet no contact was made with the Bridgeport Police Department. More than a year passed and the Plaintiffs did nothing. However, it is obvious from the immediate response and action of the City to the August, 2005 correspondence that the Bridgeport Police Department officials will not tolerate any violation of the Court Order.

This action demonstrates the second factor highlighted by the Defendants that the Plaintiffs were not interested in correcting and monitoring what they termed as a violation of the Court Order but were interested only in a meeting with City officials without any substantive agenda.[2]

---

[2] It should be noted that the Plaintiffs continually requested a meeting with the Mayor of the City of Bridgeport. The Mayor does not conduct the day-to-day operations of the Police Department and this request made no sense. Additionally, the Chief of Police, along with a Deputy Chief and officers of Narcotics and Vice made an effort to discuss the situation in a telephone conference with the Plaintiffs but, instead of providing any detail, counsel for the Plaintiffs insisted that a meeting was necessary. The Chief agreed to a meeting only if counsel could provide information that they could discuss or suggestions for police policy or procedure to add to what was already being done. Counsel refused to provide anything more.

Despite repeated requests for suggestions to address the Plaintiff's concerns, including any procedures, programs, or monitoring, the Plaintiffs refused to take part in any positive solutions.  Despite the refusals, the Defendants have implemented procedures to assure compliance and to be notified immediately of violations (See Exhibit A - Affidavit of Chief Anthony Armeno;   Exhibit B - Affidavit of Barbara Brazzel-Massaro).

Nowhere in the Plaintiffs' submissions to this Court is there a mention of any dialogue between the parties or a disclosure of any of the methods initiated by the Defendants to address the allegations in the most expeditious and thorough manner possible given the lack of detail by the Plaintiffs.  What has occurred is that after the receipt of the August 15, 2005 letter and review by the Bridgeport Police Department, it took immediate action to not only provide a current review of the Court Order, but also a strict warning of discipline to any officer who is found to violate the Order.   The Department immediately attempted to investigate the allegations (Exhibit A - Affidavit of Chief Armeno, Paragraph 10).  Chief Armeno initiated an investigation and could not determine whether there was one, two or more Bridgeport police officers involved in any alleged actions. Chief Armeno, along with counsel from the Office of the City Attorney, continued to request information and even repeatedly requested suggestions as to what other methods the Plaintiffs believed were necessary or helpful to satisfy the Court Order (Exhibit A - Affidavit of

Chief Armeno, and Exhibit B - Affidavit of Barbara Brazzel-Massaro with attachments).

Given the limited amount of information and the refusal of the Plaintiffs to provide any input other than request a meeting with no goals or specific purpose other than to talk, the Defendants have initiated the following actions and procedures:

1.     A memorandum was issued immediately by the Chief warning of discipline if any officer violated the January, 2001 Court Order. This was reinforced with a review of the Court Order and the Bridgeport Police Department procedure as to the Needle Exchange Program. These were read at every lineup for five consecutive days with a written copy issued to each police officer (Exhibit B – Letter dated September 13, 205 attached to Massaro Affidavit).

2.     Provided copies of the civilian complaint forms (in English and Spanish) to the Public Health Department to be kept on the Needle Exchange van and given to clients for any complaints regarding Bridgeport police officers' actions (Exhibit B – attached letter dated September 26, 2005;  Exhibit F – Affidavit of Porter).

3.     A directive from the Director of Public Health that the employees operating the van are to report any allegations of improper police conduct immediately to the Director of the newly appointed police liaison, Lt. Robert Sapiro (Exhibit G).

4.    The Coordinator of the Program will conduct seminars with the police officers in the Narcotics and Vice Division explaining the various programs.  The officer in charge of the Training Division has also provided the Coordinator with the application to be certified as an instructor so she can provide training as part of the ongoing State certification required for all police officers (Exhibit B – attached letter dated September 23, 2005 and Exhibits H and I).

5.    The Chief of Police has appointed Lt. Robert Sapiro of the Bridgeport Police Department to act as liaison with the Public Health Department and to monitor, if necessary, any claims regarding the Needle Exchange van as well as any other police issues within the Public Health Department (Exhibit A - Affidavit of Chief Armeno;  Exhibit G – Affidavit of Dr. Marian Evans).

The Plaintiffs have provided absolutely no suggestions or recommendations to better address their concerns.  The only request in this legal action is that they should be compensated for illegal stops which the Defendants deny (Exhibit B - affidavit of Barbara Brazzel-Massaro and letters dated September 13, 2005, September 14, 2005, September 15, 2005 and September 22, 2005).

The Defendants, on the other hand, had no knowledge of these allegations until August, 2005.  Plaintiffs have attached to their Motion declarations.  The Bridgeport Police Department contends that the incomplete descriptions in both the old and new declarations are not true indicators of how the Bridgeport Police

Department has acted in accordance with the Court Order and the law.  Additionally, the Defendants have immediately addressed any potential for harm through the actions noted above.

Given these actions, the Defendants respectfully request that the Court deny the Motion in its entirely.

**E.    Plaintiffs Are Asking This Court to Ignore The Barros Procedure**

The Plaintiffs have provided declarations from 7 individuals regarding their complaints about the police response to their use of the needle exchange van. These declarations were not provided to counsel for the Bridgeport Police Department prior to the initiation of this Motion.    The declarations are dated March 26, 2004, April 2, 2004, April 30, 2004, July 11, 2005, July 12, 2005, July 12, 2005, July 12, 2005 and July 15, 2005.

Of most significance is the fact that in all of the declarations, the individuals indicate that their civil rights were violated because they were improperly stopped, searched, and questioned;  however, none (although they appear to be familiar with the Bridgeport Police Department) have ever filed a complaint with the Bridgeport Police Department.    These type of allegations may be the subject of a civilian complaint pursuant to the Court Decree entered in <u>Rafael Barros v. Joseph Walsh, et al</u>, Civ. No. 72-B-CV482 (RNC).  The Federal Court has established this process to specifically address complaints by citizens for alleged violations of their civil right.

None of the complainants have utilized this process.  As part of the discussions with counsel for the Plaintiffs, it was suggested and recommended that the clientele be directed  to this process so that an investigation and corrective action could be taken immediately, if necessary, to address alleged violations.  The Plaintiffs, through counsel, have indicated that they will not take place in this process.  This refusal is baffling.  The Barros complaint procedure has been utilized since 1973.  The process has been changed over the years and offers more access to the public (Exhibit F - Affidavit of Porter). The Bridgeport Police Department has established a Division known as the Office of Internal Affairs that oversees the investigation of every complaint.  This Division is physically separated from the Police Department. The work of the officers assigned to this Division includes taking statements and gathering evidence which is supportive of the claims of some type of abuse of police power and can result in punishment ranging from loss of holiday, retraining, suspension or even termination (Exhibit F – Affidavit of Porter).

Although this process has been readily available since 1973, the Plaintiffs chose to ignore it and, instead, sit by and allow what they allege are violative acts to continue.   Counsel for the Plaintiffs knew well over a year ago that they had gathered declarations about improper police actions but chose not to act.  At the very least, the clients should have filed civilian complaints with the Department to put them on notice of the allegations. The refusal to use the Barros complaint procedure

is not only non-productive, but is an insult to the Court who established a federally mandated decree that has been operating for 32 years in the City of Bridgeport. If the Plaintiffs had utilized the process in March, 2004 when they first actively sought declarations, the parties may very well have addressed any improper conduct or clarified any misunderstandings.

The Defendants request that instead of awarding monetary relief, this Court find all future complaints should be referred to the Office of Internal Affairs for investigation and necessary follow-up including discipline or retraining, if necessary, of officers who are determined to have failed to follow the law.

THE DEFENDANTS

By: _____
Barbara Brazzel-Massaro
Associate City Attorney
OFFICE OF THE CITY ATTORNEY
999 Broad Street - 2nd Floor
Bridgeport, CT 06604
Telephone #203/576-7647
Fed. Bar No. 05746

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid, on this 26th day of October, 2005, to:

**Graham Boyd, Esq.**
**Alicia Young, Esq.**
**Harry Williams, Esq.**
**ACLUF**
**160 Foster Street**
**New Haven, CT  06106**

**Rebecca Bernhardt, Esq.**
**Adam Wolf, Esq.**
**Michael Perez, Esq.**
**1101 Pacific Avenue, Suite 333**
**Santa Cruz, CA  955060**

**Philip Tegeler, Esq.**
**CCLU**
**32 Grand Street**
**Hartford, CT  06106**

_Barbara B. Massaro_

Barbara Brazzel-Massaro

BMF05119                                            21