

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN DOE | : | |
| Plaintiff, | : | CIV. NO: 3:00CV2167 (JCH) |
| v. | : | |
| BRIDGEPORT POLICE DEPARTMENT, ET AL | : | |
| Defendants | : | OCTOBER 26, 2005 |

### AFFIDAVIT

I, Chief of Police Anthony Armeno, having been duly sworn, hereby depose and say:

1.  I am over the age of eighteen and make this affidavit of my own personal knowledge.

2.  I am presently serving as the Acting Police Chief for the City of Bridgeport Police Department and have been serving in this position since January 27, 2005.

3.  Prior to this position, I served as Deputy Chief responsible for patrol command, community initiatives, and as assigned in the Chief's absence.

4.  I have served as Commander of the Office of Internal Affairs from November, 2000 to March, 2002, which included some of the time period during the original legal action.

5.    Since the period of time from January, 2001, I have been aware of the Court Order relating to the interpretation of the distribution of needles through the Needle Exchange Program in the City of Bridgeport.

6.    As Acting Chief, and in my prior positions, I have not been made aware of any police officer violating the State law as interpreted by Judge Hall in the January, 2001. The Court Order was published in the Police Department in January, 2001 and training has taken place within the Department that discussed the law and its application to police duties.

7.    By way of correspondence dated August 15, 2005, I became aware for the first time of complaints regarding officers not following the January, 2001 Order of the Court.

8.    I contacted the Office of the City Attorney soon after receipt of the correspondence. That office followed up by scheduling a meeting with one of my Deputy Chief's, James Honis, and Captain Radzmirski, the Commander of the Division of Narcotics and Vice.

9.    After this meeting, the Deputy Chief and I met to determine what would be the most effective and immediate course of action given the allegations in the complaint. Based upon the limited information and the unclear time period, I immediately took action by authoring a memorandum to all police personnel informing them of the action that would be taken if anyone violated the Court Order. In conjunction with

this memorandum, I ordered that the Bridgeport Training Bulletin, as well as the specific January, 2001 Court Order, be read at each lineup in the Department for five consecutive days. In addition to the reading, each and every officer was given a copy of the training bulletin and the memorandum.

10. Once this action was taken to immediately address any potential complaints I, along with the supervising officers, attempted to determine whether there were certain police officers that were involved in the events. The original correspondence referred to time periods described as seasons such as winter, spring or summer. The time periods noted were as far back as 2003 and one such description was winter 2003 – 2004. These descriptions made it impossible to determine if there was a problem with a specific officer, or group of officers or particular division or shift of the department. I requested that the Office of the City Attorney obtain more information to help me pinpoint what, if any, problem there is within the Department in relation to these allegations so that I could focus on correcting or disciplining the officers involved and, thus, prevent any potential violations. Although requested, I did not receive any specific information from the Office of the City Attorney to aid me in taking further specific immediate action. I learned later, through correspondence with counsel for the City and in a conversation with the Plaintiffs' counsel, that the Plaintiffs would not provide any information that would assist us in this regard.

11. In an effort to provide a more focused approach to the complaints, I scheduled a meeting with the Office of the City Attorney and the Commanders of Training, Narcotics and Vice, Patrol, and Internal Affairs to determine what other action, if any, should be taken by the Department. During the course of that meeting, we placed a telephone call directly to Mr. Adam Wolf in an effort to discuss more fully the allegations. I had hoped at that time to obtain more detailed information identifying the officers or areas that were allegedly the focal point for violating the Court Order. I attempted to obtain some additional information that would, at a minimum, lead me to a particular time and place of the alleged violations so that I could focus on the situation and determine if any further action, including more education and/or discipline, should be initiated.

12. Mr. Wolf was not available when we first called him but later, in that same afternoon, City Attorney Mark T. Anastasi, Barbara Massaro, Deputy Chief Honis, Captain Chapman and Lt. LaMaine met in my office and we again placed a telephone call to Mr. Adam Wolf. He was available and, after locating Ms. Bernhardt, took the time to talk to us. I immediately indicated to Mr. Wolf that I was very well aware of the allegations and "sensitive" to his clients, as well as his, concerns. In the conversation that followed, I informed him that I had taken immediate action and would find it helpful if he could provide more specific information so that I could be certain that the situations were addressed and proper

responses or action taken. Despite my numerous requests in the telephone conversation with Plaintiffs' counsel for additional information to aid me in performing my duty to satisfy the Court Order, there was a hesitancy and then counsel for the Plaintiffs refusal to provide any more information. Instead of helping to address the allegations, counsel continued to ask for a meeting with me. I indicated that I had no objection to a meeting but I wanted to be prepared to answer questions and provide the solutions that the Department was initiating that would eliminate any harm. Counsel never provided any specific information or proposed programs, procedure or solutions to their complaints during that conversation. However, it was my understanding that at the conclusion of the conversation, counsel would discuss the requests with their clients and respond to the requests. I learned after, through another letter, that the Plaintiffs would not provide any suggestions or particulars to help but, instead, simply demanded a meeting with no agenda.

13. Even though the Plaintiffs gave no additional information, I determined that I would, as Chief, initiate a cooperative program with the Health Department. I have assigned an officer to be a liaison with the Health Department. I have also directed further training to the Department as a whole and also to the Narcotics and Vice Division with Health Department personnel. Forms for the <u>Barros</u> complaint procedure have been distributed to the Health Department and will be kept on the Needle Exchange vehicle in the event of a complaint regarding police activity.

14. I have also authorized additional training and some classes will be conducted by health officials, including those associated with the Needle Exchange Program in Bridgeport.

15. I have been in touch with Dr. Marian Evans in the Health Department and have stressed the need for an open dialogue to help both Departments to do their jobs. With the addition of Lt. Robert Sapiro as a liaison and the continuing education, there should not be complaints as alleged in the instant complaint that date back years which are not capable of being investigated.

_____
Anthony Armeno

Sworn and subscribed before me

this 26th day of October, 2005

_____
Barbara Brazzel-Massaro
Commissioner of the Superior Court