1  GRAHAM A. BOYD (CBN 18419)
2  REBECCA BERNHARDT (PHV 0616)
   ADAM B. WOLF (PHV 0617)
3  AMERICAN CIVIL LIBERTIES UNION
       DRUG LAW REFORM PROJECT
4  1101 Pacific Ave., Suite 333
5  Santa Cruz, CA  95060
   Tel:  (831) 471-9000
6  Fax:  (831) 471-9676

7  Attorneys for Plaintiffs

FILED

2005 DEC -1  P 12: 28

U.S. DISTRICT COURT
BRIDGEPORT, C.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN DOE, JOHN ROE, & CONNECTICUT HARM REDUCTION COALITION, | Case No. 3-00-cv-2167 (JCH) |
| Plaintiffs, | **PLAINTIFFS' POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO CLARIFY INJUNCTION** |
| vs. | |
| BRIDGEPORT POLICE DEPARTMENT & ANTHONY ARMENO, Acting Chief of the Bridgeport Police Department, in his official capacity only, | Court: Hon. Janet C. Hall  Filed: December 1, 2005 |
| Defendants. | |

This Court has prohibited Bridgeport Police Department ("BPD") officers from penalizing injection drug users for possessing "up to thirty sets of injection equipment, within the scope of Conn. Gen. Stat. § 21a-240(20)(A)(ix)." *Doe v. Bridgeport Police Dep't*, 198 F.R.D. 325, 350 (D. Conn. 2001) ("2001 injunction"). Although Conn. Gen. Stat. § 21a-240(20)(A)(ix) ("Section (ix)") legalizes the possession of injection equipment, defendants now argue that this statute does not legalize the possession of "cookers" and various other objects that fall within the definition of injection equipment, and therefore they continue to harass and otherwise penalize plaintiffs for possessing such equipment. Accordingly, plaintiffs seek clarification that, from this

Pls.' P&As in Supp. of Mot. to Clarify Injunct.                                                        1
Case No. 3-00-cv-2167 (JCH)

point forward, the Court's injunction prohibits defendants from penalizing plaintiffs for possessing no more than thirty cookers, cotton pieces, and other injection equipment.

Specifically, plaintiffs respectfully request that the Court hold that "injection equipment," as used in the 2001 injunction, be construed to mean "objects, such as syringes, cotton, and cookers (containers used to mix an injectable controlled substance with a liquid), that are used for injecting controlled substances and that are pathways through which bloodborne viruses and bacteria may be shared." As plaintiffs discuss below, this definition comports with the plain language of Section (ix), provides meaning to all words and phrases in this statutory provision, and effectuates the intent of the broader statutory framework establishing syringe exchanges and legalizing the possession of injection equipment in order to reduce infectious-disease transmission.

Plaintiffs will not rehash at length the arguments they have raised previously regarding why "injection equipment" includes equipment like cotton and cookers. Those arguments—articulated in plaintiffs' reply brief in support of their motion for contempt—are as follows: (1) the plain language of Section (ix) permits the possession of objects like cotton and cookers; (2) defendants' contention that possessing cotton and cookers is illegal cannot be correct because this would mean that the City's own Exchange subjects its clients and its employees to criminal liability; (3) defendants' interpretation of the statute, if adopted, would undermine the purposes of the Exchange and its implementing legislation by creating a public-health risk; and (4) defendants' understanding of the scope of the state statute would eviscerate the utility of the injunction. *See* Plts.' Reply Br. in Supp. of Mot. for Contempt (Dkt. No. 61), at 3-5.

Plaintiffs now provide additional reasons why defendants cannot, under state law and the Court's 2001 injunction, penalize plaintiffs for possessing equipment like cotton and cookers.

Pls.' P&As in Supp. of Mot. to Clarify Injunct.
Case No. 3-00-cv-2167 (JCH)

2

As requested by the Court at the November 17, 2005, hearing, plaintiffs will focus on canons of statutory interpretation and the language of the state statutes upon which the Court crafted its injunction.

## ARGUMENT

The Court's 2001 injunction prohibits defendants from penalizing plaintiffs for possessing "injection equipment, within the scope of Conn. Gen. Stat. § 21a-240(20)(A)(ix), whether sterile or previously used . . . ." *Doe*, 198 F.R.D. at 350. The referenced statute, Section (ix), legalizes the possession of no more than "thirty hypodermic syringes, needles and other objects used, intended for use or designed for use in parenterally injecting controlled substances into the human body." Conn. Gen. Stat. § 21a-240(20)(A)(ix) ("Section (ix)").

Neither plaintiffs nor defendants contest the meaning of "syringes" or "needles." The issue raised in this motion is what, if anything, is encompassed by the phrase "other objects used, intended for use or designed for use in parenterally injecting controlled substances." Defendants attempt to minimize the scope of the 2001 injunction by arguing that Section (ix) does not legalize the possession of injection equipment other than syringes and needles. However, the statute encompasses more than syringes and needles. Indeed, Section (ix) expressly legalizes the possession of "syringes, needles *and other objects* used . . . in parenterally injecting controlled substances into the human body." Section (ix) (emphasis added).

For the reasons that plaintiffs have previously articulated, as well as those below, Section (ix) allows the possession of items like cotton and cookers because they are "objects used . . . in parenterally injecting controlled substances into the human body." This interpretation of Section (ix) is both faithful to the plain language of the statute and compelled by established canons of statutory interpretation.

Pls.' P&As in Supp. of Mot. to Clarify Injunct.
Case No. 3-00-cv-2167 (JCH)

3

## I. THE PLAIN LANGUAGE OF SECTION (ix) LEGALIZES THE POSSESSION OF OBJECTS SUCH AS COTTON AND COOKERS

When interpreting a statute, the Court must look first to its plain language. *State v. Gibbs*, 254 Conn. 578, 602 (2000).[1] By its own terms, Section (ix) applies to injection equipment such as cotton and cookers because they are "objects used . . . in parenterally injecting controlled substances."

Dr. Robert Heimer, an Associate Professor of Epidemiology and Public Health at the Yale University School of Medicine, the author or co-author of more than 50 peer-reviewed publications about HIV and/or hepatitis transmission, and a nationally-recognized expert on HIV and hepatitis transmission among injection drug users ("IDUs"), describes the process of injecting controlled substances:

> A typical injection will involve several pieces of injection equipment. IDUs generally mix an injectable drug with water (or sometimes other liquids) in a mixing container, often called a cooker. They then draw the mixture into the syringe, filtering the mixture with cotton to remove undissolved particulates. If the drugs are being shared, the mixture is measured out by dispensing [it] back into the cooker for another user to place into the syringe or measured directly into the other user's syringe (assuming they are not sharing a single syringe).

Decl. of Dr. Robert Heimer in Supp. of Plts.' Mot to Amend Injunct. (signed Nov. 22, 2005), at ¶ 12 (emphasis added). The cotton and cooker, Dr. Heimer notes, are necessary for injecting controlled substances because most injectable controlled substances "are purchased in solid form and need to be dissolved before they are injected." *Id.* at ¶ 13 (stating that cotton and cookers are objects that are used "[a]s a matter of course" for injection). In other words, many injectable substances, such as heroin, could not be injected into the human body without cotton and a

---

[1] A federal court interpreting a state statute must employ the principles of statutory interpretation that the state's courts use when construing legislative enactments. *KLC, Inc. v. Traynor*, 426 F.3d 172, 175-76 (2d Cir. 2005).

cooker. *Id.* at ¶¶ 12-13; *cf.* Lorna E. Thorpe et al., *Risk of Hepatitis C Virus Infection Among Young Adult Injection Drug Users Who Share Injection Equipment*, 155 Am. J. Epidemiology 645, 649 (2002) (Exh. A to Decl. of Dr. Heimer) (consistently referring—in the title of the article and elsewhere—to cotton and cookers as "injection equipment"). Cotton and cookers are, quite simply, objects used in parenterally injecting controlled substances into the human body.

## II. WELL-ESTABLISHED CANONS OF STATUTORY CONSTRUCTION SUPPORT PLAINTIFFS' ARGUMENT THAT SECTION (ix) LEGALIZES THE POSSESSION OF OBJECTS SUCH AS COTTON AND COOKERS

If the Court finds that the plain language of Section (ix) does not clearly support plaintiffs' interpretation of the statute, it must seek to ascertain the legislature's intent by employing canons of statutory construction. *Genesky v. Town of E. Lyme*, 275 Conn. 246, 289 (2005) (Borden, J., concurring). Here, extrinsic interpretative tools also support plaintiffs' argument that cotton and cookers are "objects used . . . in parenterally injecting controlled substances into the human body."

### A. PLAINTIFFS' INTERPRETATION OF SECTION (IX) COMPORTS WITH THE LEGISLATURE'S HARM-REDUCTION GOALS IN ENACTING THE STATUTE.

One fundamental canon of statutory construction is that an interpretation of a statute should not contravene "the circumstances surrounding [the statute's] enactment and its purpose." *Daimlerchrysler Servs. N. Am., LLC v. Comm'r of Revenue Servs.*, 274 Conn. 196, 202 (2005); *see also Fyber Props. Killingworth Ltd. P'ship v. Shanoff*, 228 Conn. 476, 482 (1994). *See generally State v. Gibbs*, 254 Conn. 578, 601 (2000) ("In construing statutes, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature."). The Connecticut statutes establishing Exchange programs throughout the state and legalizing the possession of injection equipment were enacted to minimize the harm associated with injection

Pls.' P&As in Supp. of Mot. to Clarify Injunct.
Case No. 3-00-cv-2167 (JCH)

5

drug use, particularly the transmission of HIV and other bloodborne diseases that result from sharing injection equipment. *See Doe*, 198 F.R.D. at 345 ("The court concludes that the legislature intended by its 1992 enactments both to expand the needle and syringe exchange program and to expand the scope of the public health goal that animated the 1990 enactment: to prevent the spread of HIV and other blood-borne diseases . . . ."). Accordingly, Section (ix) should be interpreted to satisfy these laudable public-health goals.

It is beyond dispute that IDUs decrease their risk of contracting HIV and hepatitis if they use new—as opposed to previously used—cotton and cookers. Dr. Heimer explains the health risks that result from sharing equipment like cotton and cookers:

> Transmission of HIV and hepatitis also can occur when IDUs share injection equipment besides syringes, such as cookers or cotton. The blood that is introduced into a syringe can be transferred to the cooker and into the cotton when a used syringe is used to add water to [the] cooker to dissolve drugs. If the drug solution is shared or the cooker or cotton is reused, the contaminated materials can be spread from the cooker or cotton into another syringe, and an infection can be transmitted when that syringe is used to make an injection.

Decl. of Dr. Heimer, at ¶ 16; *see also id.* at ¶ 12 ("Disease can be spread if any of the injection equipment mentioned above [including syringes, cotton and cookers] is dirty and shared.").

Many studies, one of which is attached as an exhibit to Dr. Heimer's declaration, have demonstrated that sharing injection equipment like cotton and cookers is a "statistically significant predictor[] of [hepatitis C virus] transmission." Thorpe, *Risk of Hepatitis C Virus Infection*, 155 Am. J. Epidemiology at 649 (Exh. A to Decl. of Dr. Heimer); *see also* Heimer Decl. at ¶ 18 ("'[S]yringe exchange' is somewhat of a misnomer because such a program should provide new injection equipment like cookers and cotton, in addition to syringes, in order to fulfill its public-health mission."). In fact, one may be more likely to contract hepatitis from

Pls.' P&As in Supp. of Mot. to Clarify Injunct.
Case No. 3-00-cv-2167 (JCH)

6

using a previously-used cooker than from using a previously-used syringe. Thorpe, *Risk of Hepatitis C Virus Infection*, 155 Am. J. Epidemiology at 649 (Exh. A to Decl. of Dr. Heimer).

To exclude cotton and cookers from the scope of Section (ix) would be destructive to the statute's purpose to "prevent the spread of HIV and other blood-borne diseases." *Doe*, 198 F.R.D. at 345 (noting the purpose of the statute). Because IDUs must have access to, and thus possess, unused cotton and cookers in order to reduce infectious-disease transmission, these items must be included within the meaning of "other objects" in order to effectuate the legislature's intent in promoting safer drug injection. Indeed, defining "other objects" as "equipment that is used for injecting controlled substances and that can be a pathway through which bloodborne viruses and bacteria may be shared" fulfills the harm-reduction goals this Court ascribed to the legislature in the 2001 injunction.

### B. PLAINTIFFS' INTERPRETATION OF SECTION (IX) WOULD PROVIDE MEANING TO ALL WORDS AND PHRASES OF THE STATUTE.

The Connecticut Supreme Court has long-recognized the canon of statutory construction requiring courts to avoid interpretations that render any words or phrases of a statute meaningless. *See, e.g., Lostritto v. Cmty. Action Agency of New Haven, Inc.*, 269 Conn. 10, 37 (2004) (rejecting defendants' proposed interpretation of a statute because the interpretation would render one phrase of the statute "superfluous or meaningless"). Section (ix), as discussed above, references "syringes, needles, and other objects used, intended for use or designed for use in parenterally injecting controlled substances." In urging the Court to hold that injection equipment includes nothing other than syringes and needles, Defendants propose an interpretation that would render a portion of the statute—"other objects"—superfluous. In

Pls.' P&As in Supp. of Mot. to Clarify Injunct.
Case No. 3-00-cv-2167 (JCH)

7

contrast, plaintiffs' interpretation of "other objects" includes objects other than syringes or needles, providing meaning to every word and phrase of the legislative enactment.

### C. DEFENDANTS' INTERPRETATION OF THE STATUTE WOULD LEAD TO ABSURD RESULTS.

A final canon of statutory construction provides that statutes should be interpreted in a way that will not produce "absurd results." *Kelly v. City of New Haven*, 275 Conn. 580, 616 (2005); *Town of Southington v. Commercial Union Ins. Co.*, 254 Conn. 348, 357-58 (2000). As discussed above, plaintiffs' interpretation of Section (ix) would lead to the realization of the legislature's public-health goals, whereas defendants' interpretation would contravene those goals and have lethal consequences.

A number of absurd results would occur should equipment like cookers not be deemed to be "other objects" within the scope of Section (ix), including the following: (1) IDUs would have a strong incentive to either not accept or immediately discard new cookers they receive from the Exchange because of the potential criminal consequences of possessing these items, notwithstanding the fact that, as discussed above, using a dirty cooker can lead to the spread of infectious diseases at greater rates than sharing syringes; (2) the effect of the Court's injunction would be eviscerated because IDUs frequently carry cotton, cookers, and syringes simultaneously due to the centrality of all of these objects in the injection process; and (3) the Exchange's employees would be subject to criminal liability for possessing and conspiring to possess illegal drug paraphernalia.

Characterizing the effect of defendants' interpretation as "lethal" is unfortunately not hyperbolic. It is indisputable that using another's previously used cotton or cooker to inject controlled substances is a primary way that IDUs contract HIV and hepatitis. Defendants' interpretation of Section (ix), therefore, would be a death sentence for many Connecticut

residents. In contrast, by recognizing that "other objects" includes items like cotton and cookers—and thereby clarifying the 2001 injunction—the Court would prevent this unnecessary public-health tragedy.

## CONCLUSION

Accordingly, plaintiffs respectfully request that the Court declare that "injection equipment," as used in its 2001 injunction, means "objects, such as syringes, cotton, and cookers (containers used to mix an injectable controlled substance with a liquid), that are used for injecting controlled substances and that are pathways through which bloodborne viruses and bacteria may be shared."

Dated: November 30, 2005

Respectfully submitted,

Adam B. Wolf
Graham A. Boyd
Rebecca Bernhardt
AMERICAN CIVIL LIBERTIES UNION
    DRUG LAW REFORM PROJECT
1101 Pacific Ave., Suite 333
Santa Cruz, CA 95060
Telephone: (831) 471-9000
Fax: (831) 471-9676

By: _____ for Adam Wolf
Adam B. Wolf (PHV 0617)

Attorneys for Plaintiffs

Pls.' P&As in Supp. of Mot. to Clarify Injunct.
Case No. 3-00-cv-2167 (JCH)

9