JUN 3 0 2006

GRAHAM A. BOYD (CBN 18419)
REBECCA BERNHARDT (PHV 0616)
ADAM B. WOLF (PHV 0617)
ALYSE BERTENTHAL (PHV granted without number)
American Civil Liberties Union
    Drug Law Reform Project
1101 Pacific Avenue, Ste. 333
Santa Cruz, CA  95060
Telephone:  (831) 471-9000
Fax:  (831) 471-9676

Attorneys for Plaintiffs

| | |
|---|---|
| JOHN DOE, JOHN ROE, & CONNECTICUT HARM REDUCTION COALITION, <br><br>           Plaintiffs, <br><br>    vs. <br><br> BRIDGEPORT POLICE DEPARTMENT & ANTHONY ARMENO, Acting Chief of the Bridgeport Police Department, in his official capacity only, <br><br>           Defendant. | Case No. 3-00-cv-2167 (JCH) <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; PLAINTIFFS' POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES** <br><br><br> Court: Hon. Janet C. Hall <br> Filed: June 30, 2006 <br> ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................i

INTRODUCTION...........................................................................................................1

FACTS AND PROCEDURAL BACKGROUND .........................................................1

ARGUMENT ...................................................................................................................6

I.   **Plaintiffs Are Entitled to Attorney's Fees In the Amount of $76,986.** ...............6

    A.   Plaintiffs are "Prevailing Parties" For Purposes of Section 1988 After This Court Granted Their Motion, Which Expands the Scope of The Court's Previously-Issued Injunction, Prevents BPD Officers From Harming Plaintiffs, and Decreases the Risk that Plaintiffs Will Contract Infectious Diseases....................6

    B.   The Loadstar Figure.................................................................................................8

             *1. Number of Hours Reasonably Expended* .........................................................9
             *2. Reasonable Hourly Rate* ...............................................................................10
             *3. Calculation of the Lodestar Figure* ..............................................................13

    C.   Plaintiffs Seek an Upward Adjustment of The Lodestar Calculation By a Factor of 1.5 Because Most All of the Upward-Adjustment Factors Militate in Favor of Increasing the Lodestar. ........................................................................................13

    D.   Plaintiffs' Request for Attorney's Fees .................................................................15

II.   **Plaintiffs Are Entitled to Costs in the Amount of $4,163.55.** ..........................15

CONCLUSION ..............................................................................................................16

## INTRODUCTION

On May 31, 2006, this Court issued an Order that granted plaintiffs' motion to enlarge the scope of the Court's previously-issued injunction and that modified the injunction accordingly. This new, broader injunction protects plaintiffs, a class of all injection drug users ("IDUs") in Bridgeport, Connecticut, from being arrested or otherwise penalized for possessing cookers, cottons, and other objects used in the process of parenterally injecting controlled substances. As discussed below, the new injunction also better protects plaintiffs' health by decreasing the likelihood plaintiffs will acquire HIV, Hepatitis C, and other infectious diseases.

Following the Court's order, which granted plaintiffs the exact relief they requested, defendants have refused to pay attorney's fees in this civil-rights action.[1] Accordingly, plaintiffs hereby move for attorney's fees pursuant to 42 U.S.C. § 1988.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiffs filed the action at bar in 2000 pursuant to 42 U.S.C. § 1983 as a putative class action against the Bridgeport Police Department ("BPD"), as well as its Chief in his official capacity, for violations of the Fourth Amendment to the United States Constitution. *Doe v. Bridgeport Police Dep't*, 198 F.R.D. 325, 328 (D. Conn. 2001). The complaint alleged that defendants were violating IDUs' Fourth Amendment rights when the officers were confiscating injection equipment—or otherwise penalizing IDUs based on their possession of this equipment, including their utilization of the services of the Bridgeport Syringe

---

[1]    After a brief exploratory conversation that ended with defendants' counsel promising to call plaintiffs' counsel the next business day, defendants have not returned plaintiffs' counsel's telephone calls to discuss the possibility of settling the attorney's-fees issue without involving the Court. *See* Declaration of Adam B. Wolf (signed June 29, 2006), at ¶ 6.

ORAL ARGUMENT REQUESTED
Pltfs' P&As in Supp. of Mot. for Atty's Fees

1

Exchange ("Exchange")—because state law did not criminalize the possession of injection drug equipment.

In January 2001 the Court certified plaintiffs' class to include all present and future injection drug users in Bridgeport, *id.* at 333-34, and issued the following permanent injunction:

> Defendants [BPD] and Wilber L. Chapman, Chief of the [BPD], their agents, employees, assigns, and all persons acting in concert or participating with them are enjoined and restrained from searching, stopping, arresting, punishing or penalizing in any way, or threatening to search, stop, arrest, punish or penalize in any way, any person based solely upon that person's possession of up to thirty sets of injection equipment, within the scope of Conn. Gen. Stat. § 21a-240(20)(A)(ix), whether sterile or previously-used, or of a trace amount of narcotic substances contained therein as residue.

*Id.* at 350.

Plaintiffs' counsel thereafter received communications from class members that BPD was continuing to confiscate their injection equipment, including syringes, needles, and cookers, which was preventing class members from using sterile equipment. Accordingly, plaintiffs filed a motion for contempt [Dkt. No. 46] in September 2005. Plaintiffs' briefing in support of this motion included an argument that Conn. Gen. Stat. § 21a-240(20)(A)(ix) ("Section (ix)")—referenced in the injunction—allowed for the possession of up to 30 cookers and other injection equipment. *See* Pltfs' Reply Br. in Supp. of Mot. for Contempt. [Dkt. No. 61], at 3-5.

Defendants opposed the contempt motion by arguing that, *inter alia*, the Court's 2001 injunction applied to the possession of syringes and needles only, and therefore defendants were not violating the injunction when they were confiscating class members' injection equipment other than syringes and needles (e.g., cookers and cottons). Defs' Memo. in Opp. to Pltfs' Mot. for Contempt [Dkt. No. 55], at 5-8. At the November 2005 hearing on plaintiffs' motion for contempt, defendants reiterated their understanding that

ORAL ARGUMENT REQUESTED
Pltfs' P&As in Supp. of Mot. for Atty's Fees

2

the Court's 2001 injunction did not speak to injection equipment other than syringes and

needles, in part because plaintiffs complained when they originally instituted this lawsuit that

BPD officers were confiscating only syringes and needles. Transcript (Nov. 17, 2005), at

22:8 – 23:7. Defendants then defended their alleged confiscations of cottons and cookers,

noting that they interpreted state law such that BPD officers could arrest people for

possessing cottons, cookers, and any other equipment (besides syringes and needles) that

were used during the process of parenterally injecting controlled substances. *Id.* at 40:16 –

41:4.

At the end of the November 2005 contempt hearing, the Court indicated that it

likely did not think that cookers were included within the scope of its 2001 injunction, but

asked plaintiffs to file a motion if they were requesting that the injunction be amended to

include such injection equipment. *Id.* at 47:16 - 25. The Court recognized that plaintiffs had

already briefed the issue of whether Section (ix) should be interpreted to include cottons,

cookers, and other injection equipment, and it invited the parties to brief this issue further if

they could raise other arguments regarding canons of statutory interpretation, legislative

history, and the structure and language of the state's drug-paraphernalia statute. *Id.* at 47:10

– 48:14.

Plaintiffs filed their motion to expand the scope of the Court's 2001 injunction on

December 1, 2005, raising the statutory-interpretation arguments mentioned by the Court at

the November 2005 hearing and attaching in support an expert declaration and an article

from a peer-reviewed scientific journal. Pltfs' Mot. to Clarify Injunct. [Dkt. No. 73]; Declar.

of Dr. Robert Heimer [Dkt. No. 73-2] & Exh. A.[2]   Opposing this motion, defendants filed

---

[2]     Although plaintiffs originally styled this motion as a motion to "clarify" the
previously-issued injunction, they later noted that they had no objection to the Court treating

a memorandum that stated, among other things, that "[t]he [cooker] is not illegal until drugs are placed in the object." Defs' Rep. to Mot for Clarif. [Dkt. No. 86], at 8. Defendants' opposition to plaintiffs' motion also included a request—construed by the Court as defendants' own motion—that the Court find that Section (ix) "does not exclude cookers form [*sic*] items designated as drug paraphernalia." *Id.* at 19.

Plaintiffs subsequently filed a brief reply stating their understanding that defendants had conceded that Section (ix) permitted the possession of fewer than 31 new or sterile cookers, and plaintiffs agreed to withdraw their motion if the Court were to amend its 2001 injunction to expressly include protections for possessing new or sterile cottons and cookers. Pltfs' Reply in Supp. of Mot. to Clarify Injunct. [Dkt. No. 89]. In this pleading, plaintiffs requested that they be granted leave to file a substantive reply if the Court were not inclined to amend the injunction in light of defendants' admission regarding new or sterile cottons and cookers. *Id.* at 2.

Defendants thereafter filed a "response" brief repudiating their previously stated position regarding sterile cookers and raising new arguments as to why state law did not permit the possession of injection equipment other than syringes and needles. Defs.' Resp. to Pltfs' Proposed Order and Reply [Dkt. No. 92]. Finally, plaintiffs' sought leave to file a substantive reply in support of their motion to amend the injunction [Dkt. No. 97], which motion the Court granted [Dkt. No. 99]. Accordingly, plaintiffs filed a reply brief that, *inter alia*, discussed the structure of the drug-paraphernalia statute and the testimony of plaintiffs'

---

it as a motion to amend or enlarge the scope of the injunction. Pltfs' Substantive Reply in Supp. of Mot. to Clarify Injunct. [Dkt. No. 97-2], at 1 n.1. In subsequently granting this motion, the Court stated that it had construed plaintiffs' motion as a motion to modify the injunction. *Doe v. BPD*, -- F. Supp. 2d --, 2006 WL 1652412, at *2 n.4 (D. Conn. May 31, 2006).

ORAL ARGUMENT REQUESTED
Pltfs' P&As in Supp. of Mot. for Atty's Fees

expert at the December 15, 2005, trial on plaintiffs' contempt motion.[3]  *See* Pltfs' Substantive

Reply Br. in Supp. of Mot. to Clarify Injunct. [Dkt. No. 97-2], at 9.

The Court heard argument on plaintiffs' motion to modify the injunction on May 12,

2006, and the Court issued its Opinion and Order on May 31, 2006.  *Doe v. Bridgeport Police*

*Dep't,* -- F. Supp. 2d --, 2006 WL 1652412 (D. Conn. May 31, 2006).  Agreeing with

plaintiffs' argument that the plain language of Section (ix) includes injection equipment like

cookers and cottons—and citing the testimony of two of plaintiffs' witnesses from the

December 15, 2005 trial, *see supra* n.3—the Court amended its injunction to make clear that

the injunction now includes the possession of *all* objects used in parenterally injecting

controlled substances.  *Doe v. BPD,* 2006 WL 1652412.  Specifically, the Court amended its

2001 injunction as follows (added portion of injunction underlined):

> Defendants [and their employees] . . . are enjoined and restrained from . . .
> penalizing in any way . . . any person based solely upon that person's
> possession of up to thirty sets of injection equipment, within the scope of
> Conn. Gen. Stat. § 21a-240(20)(A)(ix), whether sterile or previously-used, or
> of a trace amount of narcotic substances contained therein as residue.
> "Injection equipment" is defined as objects, such as needles, syringes,
> cottons, and cookers (containers used to mix an injectable controlled
> substance with a liquid), that are used, intended for us or designed for use in
> parenterally injecting controlled substances within the human body.

*Id.* at *10.

---

[3]     The bulk of the testimony adduced at the two-day contempt trial concerned evidence
regarding the contempt motion.  However, plaintiffs elicited the important testimony of two
witnesses during the contempt trial expressly in support of their motion to enlarge the scope
of the injunction: (1) Dr. Robert Heimer, an Associate Professor in the Department of
Epidemiology and Public Health at the Yale University School of Medicine, *see* Transcript
(Dec. 15, 2005), at 179:11 – 188:7; and (2) Robin Clark-Smith, the City of Bridgeport's AIDS
Program Director and the supervisor of the City's Exchange, *see id.* at 148:19 – 152:13.  *See*
*Doe v. BPD,* -- F. Supp. 2d --, --, 2006 WL 1652412, at *3, *9 n.9 (D. Conn. May 31, 2006)
(citing this testimony and recognizing the testimony's relevance to plaintiffs' motion to
enlarge the scope of the injunction).

As prevailing parties in this civil-rights action, plaintiffs have requested their reasonable attorney's fees and costs from defendants. Defendants, however, have refused to pay fees and costs, and plaintiffs therefore file this motion for the Court to order defendants to pay the fees and costs that plaintiffs deserve.

## ARGUMENT

### I.    Plaintiffs Are Entitled to Attorney's Fees In the Amount of $76,986.

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b) ("Section 1988"), allows the "prevailing party" in a civil rights action to receive "a reasonable attorney's fee as part of the costs . . . ." *See also Hensley v. Eckerhart*, 461 U.S. 424, 426, 429 (1983). Because plaintiffs are indisputably the "prevailing party," as discussed below, after the Court granted their motion to expand the scope of the 2001 injunction, plaintiffs are entitled to fees in this civil-rights action. For the reasons stated below, plaintiffs request attorney's fees in the amount of $76,986.

      A.      Plaintiffs are "Prevailing Parties" For Purposes of Section 1988 After This Court Granted Their Motion, Which Expands the Scope of The Court's Previously-Issued Injunction, Prevents BPD Officers From Harming Plaintiffs, and Decreases the Risk that Plaintiffs Will Contract Infectious Diseases.

Plaintiffs are plainly the prevailing party after the Court granted their motion to expand the scope of the injunction. The expansion of the injunction prohibits BPD from acting in ways that they had in the past and were threatening to do in the future—actions that clearly injure plaintiffs.

For purposes of awarding fees under Section 1988, parties are deemed "prevailing" if they "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433; *see also LeBlanc-Sternberg v. Fletcher*,

143 F.3d 748, 757 (2d Cir. 1998). The exact form of the relief is immaterial, so long as the relief "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff . . . ." *LeBlanc-Sternberg*, 143 F.3d at 757.

Plaintiffs are the prevailing party after the Court granted their motion to expand the injunction and amended the injunction accordingly. The amended portion of the injunction enjoins BPD officers from arresting plaintiffs for possessing non-syringe and non-needle injection equipment, from confiscating this equipment, and from otherwise harassing or penalizing plaintiffs for possessing these objects. Such arrests, confiscations, and harassment were all things that defendants had argued were perfectly legal prior to the issuance of the Court's ruling.

The expansion of the injunction to include objects like cookers and cottons not only "materially alters the legal relationship between the parties," but also "directly benefits plaintiffs." *Cf. id.* (providing the test for establishing a "prevailing party"). As plaintiffs argued extensively in their motion to modify the injunction, police confiscations of clean cookers and cottons leads to IDUs sharing another's cookers and cottons, which dramatically increases IDUs' risk of contracting infectious diseases (such as HIV and Hepatitis C). Furthermore, if BPD officers were allowed to penalize plaintiffs for possessing these objects, then plaintiffs would be less likely to avail themselves of the clean injection equipment provided by the Exchange—such as cottons, cookers, and needles—prompting plaintiffs to commence using others' syringes and needles, too. In other words, the Court's

granting of plaintiffs' motion will significantly improve the health of plaintiffs and their families.[4]

Lastly, prohibiting BPD officers from confiscating injection equipment—particularly injection equipment, like cookers and cotton, that could result in the transmission of infectious disease if shared—was exactly why plaintiffs filed the action at bar. *Cf. Hensley*, 461 U.S. at 433 (noting that parties will be accorded prevailing-party status when they "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit"). Plaintiffs filed this action and sought the expansion of the 2001 injunction to decrease their risk of contracting infectious diseases and to improve public health in Bridgeport. As plaintiffs have argued in this motion and the motion to modify the injunction, the Court's expanded injunction enjoins BPD officers from acting in ways that harm plaintiffs' health. Accordingly, plaintiffs are prevailing parties for purposes of Section 1988.

B.      The Loadstar Figure

"In determining reasonable attorneys fees the court must calculate a 'lodestar' figure based upon the hours reasonably spent by counsel . . . multiplied by the reasonable hourly rate." *Cruz v. Local Union No. 3, Int'l Brotherhood of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (internal quotation marks omitted; ellipsis in original); *see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d 91, 95 (2d Cir. 2004) (per curiam). Plaintiffs calculate this rate below.

---

[4]      As the Court's ruling will protect plaintiffs' health, it will have a similarly positive impact on the health of plaintiffs' partners and children. Likewise, the public health system in Bridgeport benefits when there are fewer new cases of infectious diseases.

1.    *Number of Hours Reasonably Expended*

Plaintiffs seek to recover their fees for the time their counsel devoted toward the goal of asking the Court to expand the injunction.[5] Counsel for plaintiffs have simultaneously filed a declaration that recounts such hours, in detail, based on entries made in counsel's computerized time-tracking program.[6] Those hours are as follows: Attorney Boyd (14 hours); Attorney Bernhardt (3.8 hours); Attorney Wolf (149.2 hours); and Attorney Bertenthal (1.4 hours). Wolf Decl., at ¶¶ 7-8.

Plaintiffs have exercised billing judgment by not seeking fees for a significant number of hours that counsel and their staff expended on the litigation. For instance, this fee request does not include the 17.4 hours counsel spent writing, editing, and discussing their reply brief in support of their motion for contempt, although the majority of these hours were devoted to researching and writing the section concerning how Section (ix) should be interpreted to include injection equipment like cookers—an argument that became the basis for their motion to enlarge the scope of the injunction. Furthermore, plaintiffs are not requesting fees for most of the time spent by Attorneys Boyd and Wolf at the December 15, 2006, contempt trial, where they examined witnesses that were important for their motion to amend the injunction, and they do not seek fees for any of Attorney Bertenthal's time at the contempt trial. Nor do plaintiffs seek fees for almost any of the 5- or 10-minute conversations among counsel about strategy, which would add up to many more hours that

---

[5]    Counsel likewise include the time devoted toward preparing this fee motion. *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999) (noting that Section 1988 fees should be awarded "for time reasonably spent in preparing and defending an application for § 1988 fees").

[6]    Counsel logged their time in standard tenth-of-one-hour increments.

were reasonably expended on the litigation.[7] Furthermore, plaintiffs will completely forego seeking fees for the many hours expended by counsel's legal assistants. *See Cmty. Television Sys., Inc. v. Caruso*, 284 F.3d 430, 437 (2d Cir. 2002) (affirming award of fees to prevailing party for paralegal's reasonable hours spent on litigation activities).

Accordingly, and as further demonstrated in Attorney Wolf's declaration, plaintiffs' counsel's hours were not "excessive, redundant or otherwise unnecessary." *See Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94, 96 (2d Cir. 1997). Rather, they were "usefully and reasonably expended." *Haley v. Pataki*, 106 F.3d 478, 484 (2d Cir. 1997).

　　　　2.　　　*Reasonable Hourly Rate*

Plaintiffs request that the Court calculate the lodestar using the reasonable hourly rates that attorneys of comparable expertise would charge and receive in plaintiffs' counsel's home district. While these rates are slightly higher than those in the forum district, counsel's expertise, which they brought to bear in litigating the motion to expand the Court's 2001 injunction, warrants these rates, as discussed below.

Reasonable hourly rates for purposes of Section 1988 fees "should be 'in line with those [rates] prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation.'" *Cruz*, 34 F.3d at 1159 (alteration in original) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.1 (1984)). The relevant "community" is "usually the forum district," *Arbor Hill*, 369 F.3d at 96, although the Court can calculate the lodestar using reasonable hourly rates greater than those generally charged in the forum district "where the special expertise of non-local counsel was essential to the case, [or] it was clearly

---

[7]　　　For example, a ten-minute conversation about litigation strategy between Attorney Boyd and Attorney Wolf would amount to fees totaling $123.33 or $108.33 based on their home-district rates and Connecticut rates, respectively.

shown that local counsel was unwilling to take the case, or other special circumstances existed," *id.* at 96 (internal quotation mark omitted); *Cruz*, 34 F.3d at 1159.

Plaintiffs' counsel have expertise in drug-policy litigation and syringe-exchange issues that far exceeds that of any counsel in Connecticut. *See* Declaration of Brett Dignam (signed June 28, 2006), at ¶ 4; Declaration of Antonio Ponvert (signed June 28, 2006), at ¶ 2; Declaration of Graham A. Boyd (signed June 29, 2006), at ¶ 4; Wolf Decl., at ¶ 4. Indeed, counsel's experience in these fields might very well exceed that of any law office in the country. Boyd Decl., at   ¶ 4; *see also id.* at ¶¶ 5-11. Counsel are full-time attorneys for the American Civil Liberties Union Drug Law Reform Project, where they devote 100% of their time to drug policy issues. Founded in 1998, the Drug Law Reform Project brings class-action lawsuits throughout the country with lasting impact on public understanding of, and government response to, drug use and drug policies. *Id.* at ¶ 4.

One of the priorities for the Project is access to clean injection equipment. The Project has litigated two of the three major syringe-exchange cases in the country, and it has provided consultation regarding access to sterile cookers and cottons to counsel in New York City, where the third major case was litigated. *Id.* at ¶ 5. In addition, the Project's attorneys have worked closely with exchanges and exchange employees throughout the country to assist with the effective operation of those exchanges, including, but not limited to, providing counsel regarding the drug-paraphernalia laws in their respective states. *See, e.g.,* Wolf Decl., at ¶ 5.

Counsel used this expertise in litigating the motion to expand the scope of the injunction. For example, they employed their familiarity with the scientific literature regarding the transmission of infectious disease via injection equipment to bolster their arguments about the centrality of cottons and cookers to the injection process and the

ORAL ARGUMENT REQUESTED
Pltfs' P&As in Supp. of Mot. for Atty's Fees                                                    11

opportunity for disease transmission when such objects are shared. *See* Pltfs' Mot to Clarify Injunct., at 4-7. Likewise, plaintiffs were able to argue, based on counsel's nuanced understanding of controlled substances, that a different provision within the drug-paraphernalia statute was inapplicable to objects like cottons and cookers. *See* Pltfs' Substantive Reply Br. in Supp. of Mot. to Clarify Injunct., at 3-7; *see especially id.* at 4 & n.2. Furthermore, plaintiffs' counsel have professional relationships with experts in the field on whose advice they rely, and they were able to examine one of the world's leading experts on injection equipment with a relatively small amount of preparation time.

Having brought this expertise to bear in arguing for the expansion of the injunction, plaintiffs request that counsel be granted the hourly rates that other attorneys of their expertise command. In light of the fact that such counsel are unavailable in Connecticut, plaintiffs should be compensated at the hourly rates of similarly-experienced counsel who practice in San Francisco, the home district for plaintiffs' counsel's office.

The firm Altshuler, Berzon, Nussbaum, Rubin & Demain, where Attorney Boyd and Attorney Wolf worked after serving as judicial law clerks, is a firm that employs such counsel. Jonathan Weissglass, one of the firm's partners, has provided a declaration that sets forth reasonable hourly rates in plaintiffs' counsel's home district for attorneys with comparable experience: Attorney Boyd ($450/hour), Attorney Bernhardt ($370/hour), Attorney Wolf ($290/hour), and Attorney Bertenthal ($250/hour).[8] Declaration of Jonathan

---

[8]    Should the Court find that plaintiffs should not be compensated at the hourly rates of attorneys with similar expertise or that such counsel exist and were available in Connecticut, plaintiffs provide reasonable hourly rates in the forum district. *See* Dignam Decl., at ¶¶ 6-7 (stating that, based on her recent conversations with counsel in Connecticut and with her students working at Connecticut firms, the following are reasonable hourly rates for attorneys who, like all of plaintiffs' counsel, have served as judicial law clerks for federal judges: $375/hour for Attorney Boyd, $315 for Attorney Bernhardt, $275 for Attorney Wolf, and $230 for Attorney Bertenthal); Ponvert Decl., at ¶ 3 (same).

Weissglass (signed June 27, 2006), at ¶ 6. Plaintiffs respectfully request that the lodestar be calculated using these rates.

### 3.    Calculation of the Lodestar Figure

Multiplying the documented hours reasonably devoted by plaintiffs' counsel to the expansion of the Court's 2001 injunction by counsel's reasonable hourly rates, plaintiffs hereby calculate the lodestar figure:

| Attorney | Hours | Hourly Rate ($/hour) | Total ($) |
|---|---|---|---|
| Graham A. Boyd | 14 | 450 | 6,300 |
| Rebecca Bernhardt | 3.8 | 370 | 1,406 |
| Adam B. Wolf | 149.2 | 290 | 43,268 |
| Alyse Bertenthal | 1.4 | 250 | 350 |
| Total ($) | x | x | 51,324 |

**C.    Plaintiffs Seek an Upward Adjustment of The Lodestar Calculation By a Factor of 1.5 Because Most All of the Upward-Adjustment Factors Militate in Favor of Increasing the Lodestar.**

Plaintiffs respectfully request that the Court adjust the lodestar figure upward. In light of the well-established factors discussed below, they request a relatively modest multiplier of 1.5.

Although the lodestar calculation is presumptively correct, the Court may award the prevailing party an upward adjustment—or a "multiplier"—of the lodestar figure if it determines that the "*Hensley* factors" so warrant. *Orchano*, 107 F.3d at 98; *see also Hensley*, 461 U.S. at 430 n.3. The twelve *Hensley* factors are as follows:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Orchano*, 107 F.3d at 97 (citation omitted) (citing *Hensley*, 461 U.S. at 430 n.3).

Among the *Hensley* factors, "[t]he most critical . . . is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). This factor unquestionably militates in favor of upwardly adjusting the lodestar. The Court amended the injunction based on plaintiffs' first-line argument—that the plain language of Section (ix) clearly includes objects like cookers and cottons. *Doe v. BPD*, 2006 WL 1652412, at *5 - *9. Moreover, the language the Court added to the injunction is materially identical to that requested by plaintiffs. *Cf. id.* at *10 (containing the new language of the injunction in the last paragraph), *with* Pltfs' Subst. Reply Br. in Supp. of Mot. to Clarify Injunct. [Dkt. No. 97-2], at 9. In other words, plaintiffs succeeded in getting exactly what they had sought; their degree of success was substantial.

Most all of the remaining factors likewise militate in favor of upwardly adjusting the lodestar, and plaintiffs will comment on just a few of those factors. First, the question was both novel and difficult. Plaintiffs' argument raised an issue of first impression—with the Court expressing a fair amount of skepticism, at first, regarding plaintiffs' position. *See, e.g.*, Tr. (May 7, 2006), at 25:7 – 29:9; Tr. (Nov. 17, 2005), at 7:14 – 8:24. Second, plaintiffs' counsel has considerable ability, experience, and reputation. All four of plaintiffs' attorneys have served as judicial law clerks with federal judges and have significant experience litigating drug-policy issues. *See* Boyd Decl., at ¶¶ 5-11. Attorney Boyd and Attorney Wolf, who devoted the most time among plaintiffs' counsel in furtherance of the motion to amend the injunction, have argued in multiple federal district courts and federal courts of appeals. *Id.* at ¶¶ 6-7, 9-10. Moreover, the ACLU Drug Law Reform Project is the only law office in the country where the majority of counsel's time is devoted to litigating drug-policy issues. *Id.* at ¶ 4.

ORAL ARGUMENT REQUESTED
Pltfs' P&As in Supp. of Mot. for Atty's Fees                                    14

Finally, this clearly was not a "desirable" case. There are few attorneys who are willing to devote the considerable time required to litigate these issues on behalf of IDUs. Yet plaintiffs' counsel have forged long-standing and meaningful relationships with their clients, who are a class of all IDUs in Bridgeport.

Because the *Hensley* factors permit an upward adjustment of the lodestar figure, plaintiffs respectfully request a multiplier of 1.5.

D.      Plaintiffs' Request for Attorney's Fees

Plaintiffs recognize that they have presented various factors (e.g., upward adjustment, different hourly rates for counsel in Connecticut and plaintiffs' counsel's home district) that will influence the fee that the Court awards. For convenience, plaintiffs hereby calculate the various potential fee awards:

- Lodestar using rates for plaintiffs' counsel's home district with multiplier = $76,986
- Lodestar using Connecticut rates with multiplier = $71,698.50
- Lodestar using rates for plaintiffs' counsel's home district without multiplier = $51,324
- Lodestar using Connecticut rates without multiplier = $47,799

Plaintiffs respectfully seek fees in the amount of $76,986, as calculated by using reasonable rates for plaintiffs' counsel's home district and the requested multiplier.

## II.      Plaintiffs Are Entitled to Costs in the Amount of $4,163.55.

Plaintiffs likewise request reimbursement for the costs they have incurred in litigating the injunction issue. These costs total $4,163.55.

Awards pursuant to Section 1988 generally include costs incurred by an attorney that would ordinarily be charged to clients. *LeBlanc-Sternberg*, 143 F.3d at 763; *Kuzma v. IRS*, 821 F.2d 930, 933-34 (2d Cir. 1987) ("[C]ourts generally award reimbursement for costs in excess to those enumerated in [28 U.S.C.] § 1920 by including attorney's disbursements, which are

generally billed to clients in addition to the hourly rate, as part of an award of attorney's fees."). Such costs include charges for travel (including airfare, car rentals, and hotel expenses), transcript fees, telephone calls, postage expenses, photocopying, and on-line legal-research computer databases. *Arbor Hill*, 369 F.3d at 98 (holding that on-line legal-research charges are reimbursable under Section 1988); *Kuzma*, 821 F.2d at 934 (noting that travel and transcript fees, among other expenses, are reimbursable pursuant to Section 1988); *Hall v. Lowder Realty Co., Inc.*, 263 F. Supp. 2d 1352, 1371 (M.D. Ala. 2003) (awarding costs to out-of-state counsel for air travel, car rental, hotel expenses, and shipping costs incurred for attending proceedings in the forum state).

Plaintiffs seek reimbursement for only a few categories of reimbursable costs: transcript fees, Ms. Clark-Smith's witness fees, and travel fees for attending the relevant hearings. These costs total $4163.55.[9] Wolf Decl., at ¶¶ 9-10.


## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court grant their motion for fees and costs in the total amount of $81,149.55.[10]

---

[9]    Plaintiffs do not seek costs for Dr. Heimer's expert-witness fee, photocopying, on-line legal research, telephone calls, facsimiles, or any other costs not delineated above for which they are entitled to reimbursement.

[10]    This figure represents the costs and fees incurred by plaintiffs in litigating the motion to expand the Court's 2001 injunction and the present motion for attorney's fees. Plaintiffs respectfully request the opportunity to supplement this number to include the fees and costs incurred in litigating this fees motion between June 28, 2006 and the day that the motion is resolved.

Dated: June 29, 2006

Respectfully submitted,

Adam B. Wolf
Graham A. Boyd
Rebecca Bernhardt
Alyse Bertenthal
AMERICAN CIVIL LIBERTIES UNION
      DRUG LAW REFORM PROJECT
1101 Pacific Ave., Suite 333
Santa Cruz, CA  95060
Telephone:  (831) 471-9000
Fax:  (831) 471-9676


By: _____
    Adam B. Wolf (PHV 0616)
    Attorneys for Plaintiffs

1

## CERTIFICATE OF SERVICE

2

3   The undersigned hereby certifies that she is an employee for the American Civil Liberties Union

4   Drug Law Reform Project, 1101 Pacific Avenue, Suite 333, Santa Cruz, California 95060; is a

5   person of such age and discretion to be competent to serve papers; and that on June 29, 2006, she

6   served copies of the following:

7       1.  PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEY'S
           FEES; POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
8          ATTORNEY'S FEES;

9
        2.  DECLARATION OF GRAHAM A. BOYD IN SUPPORT OF PLAINTIFF'S
10         MOTION FOR ATTORNEY'S FEES;

11      3.  DECLARATION OF ANTONIO PONVERT III IN SUPPORT OF
           PLAINTIFF'S MOTION FOR ATTORNEY'S FEES;
12

13      4.  DECLARATION OF JONATHON WEISSGLASS IN SUPPORT OF
           PLAINTIFF'S MOTION FOR ATTORNEY'S FEES;

14
        5.  DECLARATION OF BRETT DIGNAM IN SUPPORT OF PLAINTIFF'S
15         MOTION FOR ATTORNEY'S FEES;

16      6.  DECLARATION OF ADAM B. WOLF IN SUPPORT OF PLAINTIFF'S
           MOTION FOR ATTORNEY'S FEES.
17

18  by causing said copies to be placed in a prepaid envelope addressed to the person hereinafter

19  named, at the place and address stated below, which is the last known address, by depositing said

20  envelope by a postal carrier at Santa Cruz, California:

21
    Attorney Barbara Massaro
22  Bridgeport City Attorney's Office
    999 Broad Street
23  Bridgeport, CT  06604

24

25                                          Yvette Saddik