UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN DOE, ET AL | : | |
| **Plaintiffs,** | : | CIV. NO: 3:00CV2167 (JCH) |
| v. | : | |
| BRIDGEPORT POLICE DEPARTMENT, ET AL | : | |
| **Defendants** | : | JULY 28, 2006 |

## MEMORANDUM IN OPPOSITION TO THE MOTION FOR ATTORNEY FEES

## BACKGROUND

By way of a letter dated August 15, 2005, counsel for the plaintiffs indicated to the Acting Chief of Police and City Attorney Mark T. Anastasi that there were incidents in which the Bridgeport Police Department had violated the injunction issued by the court (Exhibit A). In support of the claims, the plaintiffs alleged that four separate individuals during the time period of 2003-2005 were stopped and the needles, syringes, and ID cards they were carrying were taken (Exhibit A). Thereafter, the parties, through counsel, exchanged correspondence and telephone calls regarding the allegations. The defendants attempted to gather more specific information and descriptions in order to effectively determine what if anything was the violation by the members of the Police Department.

In addition to seeking specific supporting information, the Bridgeport Police Department requested written or oral suggestions and programs to address the plaintiffs' complaint. The plaintiffs did not provide any specific information to assist the Police Department to offer guidance for the future or to correct and or discipline the alleged violations. The Police Department immediately began a course of action to address the complaint in a generic fashion and to insure that all Bridgeport officers were obeying the January, 2001 Court Order. The efforts to develop constructive methods for oversight and immediate notification to the City were outlined in a September 22, 2005 letter to plaintiffs' counsel.

The response to the City's correspondence and efforts was to file a Motion for Contempt with this Court (Exhibit B). The Court set November 17, 2005 as the hearing date for the Motion for Contempt. At that hearing the parties argued, but the plaintiffs were not prepared to go forward with evidence concerning the Motion for Contempt. The matter was eventually re-scheduled for December 15, 2005. It was not until after the initial hearing and argument on November 17, 2005 that the plaintiffs filed with the Court a Motion to Clarify the January, 2001 Order to define "injection equipment." In particular, the plaintiffs questioned the parameters of this term to include items other than syringes and needles.

On December 15, 2005, the Court proceeded with the contempt hearing stating: "We're here today on the motion for contempt that was filed by the plaintiffs

against the defendants claiming that the permanent injunction entered by the court had been violated by the defendants." (Exhibit C, Trial transcript, December 15, 2005 at page 2). This hearing was scheduled and conducted expeditiously at the request of the plaintiff to address and resolve the contempt motion submitted by plaintiffs (Exhibit D Plaintiff's Opposition to Defendant's Motion to Continue Hearing on the Motion for Contempt).

During the two day hearing the plaintiff introduced testimony of four separate individuals vocalizing the complaints set forth in the affidavits submitted in reference to the Motion for Contempt. The plaintiffs also, over objection of defense counsel, submitted very brief testimony of Dr. Heimer concerning the method of injecting narcotic substances. Additionally, a portion of the questions to Ms. Robin Clarke-Smith concerned the subject of cookers. Other than this minimal questioning, the hearing focused on the initial purpose; that was, the Motion for Contempt.

Plaintiffs had submitted a Motion and Memorandum on December 1, 2005 to address the issue of Clarification. The defendants responded on December 16, 2005. Thereafter, the court permitted additional memorandum addressing the issue of the clarification.

This Court issued a ruling denying the Motion for Contempt. In a separate ruling the Court clarified its January 18, 2001 Order defining the term injection equipment.

Thereafter, counsel for the defendants received a telephone call from Attorney Wolf and, on June 23, 2006, spoke with him.   Attorney Wolf indicated in the very brief conversation that he would like to "chat for a few moments about the case." During the conversation he indicated that he was entitled to some attorney fees and requested the defendants' position.   At that time counsel had not submitted any written request or documentation and the only response provided was that defendants were surprised that such request was being made.   Thereafter, counsel for defendants indicated that it would be discussed with the City Attorney but it did not appear likely any fees would be paid.   Prior to any discussion with the City Attorney, who was on vacation, the plaintiffs filed the instant Motion (Exhibit E - Affidavit).  Defendants have submitted an opposition to the payment of the fees in their entirety and, as to the billable hours, submitted within the Motion.

**ARGUMENT**

I.    **The Clarification is Not a Judgment or Consent Decree That Qualifies as a Prevailing Party for Purposes of Attorney's Fees**

The Decision of the Court to modify the injunction so as to clarify an Order that was already established does not create a new avenue of relief for purposes of attorney fees.    The decision rendered by this Court does not materially alter the legal relationship with the defendants.   Although the Court has included within the definition of "injection equipment" the materials known as "cookers" and cotton, the

actual implementation and actions of the Bridgeport Police Department has not been materially affected or substantially changed because the defendants were not "searching, stopping, arresting, punishing, or penalizing in any way or threatening to search, stop, arrest, punish or penalize in any way" individuals solely related to the possession of cookers or cotton.

The original issue raised by the plaintiffs in the Motion for Contempt concerned the confiscation of needles and syringes in possession of individuals. None of the acts referred to by the plaintiffs involved any police action of confiscating only cookers.

The instant request is not similar to the original action brought before this Court that resulted in the January 18, 2001 Order when the defendants interpreted the law to permit them to stop, detain and or arrest for the possession of less than 31 syringes and needles if they contained residue of the narcotic substance. The argument of the defendants in the initial complaint was that arrests were proper under the law when the syringe contained drug residue. The January 18, 2001 Order of this Court changed the legal relationship between the parties. As a result of that Order, the defendants did voluntarily pay attorney fees (Exhibit E).

The request for clarification from both parties in the instant action was not initiated because the defendants were involved in alleged constitutional violations but the issue in the clarification is based upon the possession of cookers or cotton

and not seizure.    In fact, the plaintiffs' Motion for Contempt that was the impetus behind the filing of a Motion for Clarification resulted in a denial.

In the case of <u>Otis L. Wilson, et al. v. Mayor and Board of Alerman of St. Francisville, et al</u>, 135 F.3d 996 (5th Cir. 1998), the district court determined that the plaintiffs were not prevailing parties when, as a result of the change in the law, there was an adjustment to the consent judgment that had been entered in the court. Although there was a change in the consent order in <u>Wilson</u>, supra, the court determined that this was not a basis for awarding attorney fees.    This is very similar to the instant action in which the defendants were aware of the court order that followed the State law in regard to the possession of needles and syringes.    The Court set specific parameters on the activity of the Bridgeport Police Department based upon the plaintiffs' complaint.    The Motion for Clarification or Modification simply asked the Court to interpret the language within the Court Order to address the items referred to as "injection equipment" within the Order.    There is no evidence that the terminology made any specific difference in what actions the Bridgeport Police took in relation to any individual.    In the instant action there was no evidence that supports a position of the plaintiff that individuals are stopped, detained and/or arrested solely for possession of injection equipment whether it is a cap or instrument that could be utilized as a cooker or the cotton that may be utilized in the process of drawing and injecting an illegal substance.    The plaintiffs failed to obtain

any supporting testimony as to their intent or actions that demonstrated any effort to stop, detain or arrest because of the possession of cookers, cotton or other injection equipment. In this sense there has not been a material change that would rise to the level of finding the plaintiffs are a prevailing party.

The instant Order of the Court simply maintains the status quo of the parties and further defines the parameters of the Order.

Based upon the lack of satisfying the status as a prevailing party, the defendants contend that attorney fees should not be awarded. However, in the event the Court should determine that some fees are warranted, the defendants contend that the fees are excessive, unnecessary and unrelated and should be reduced as argued below.

## II.    Counsel is Not Entitled to a Rate Outside of the Forum of the Connecticut District Court and the Second Circuit

Although counsel requests increased hourly rates based upon the district rate in California, they do not provide any case law that would permit this Court to award such an hourly rate. The reasonable hourly rate must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886 n.11, 104 S. Ct. 1541 (1984). The prevailing community has consistently been interpreted as the

district where the court sits.    Luciano v. Olsten Corp., 109 F. 3d 111, 115 (2d Cir. 1997).

Simply because in recent months the counsel in this matter have located to California does not change the law in this Circuit which applies a rate accepted in this community.[1]

Although counsel argues that it was necessary to have counsel from California because of expertise, when the plaintiffs initiated the Motion for Contempt in September 2005, they noted in the appearances that Mr. Boyd is a member in good standing of the Connecticut Bar and Mr. Perez is a member of the Massachusetts Bar. The only California attorney noted in the original filing for Admission as a Visiting Attorney was Mr. Adam Wolf (Exhibit F - Notice of Motion and Affidavit dated September 27, 2005). Also thereafter, the plaintiffs included within the list of attorneys in this matter Alyse Bertenthal who is a member of the bar of the State of New York    (Exhibit G - Notice of Motion and Affidavit dated November 29, 2005). It was months after the filing of the initial motion for contempt that the plaintiffs notified the court of the withdrawal of some counsel and a change of address for Attorney Boyd (Exhibit H - Notices of Withdrawal and Change of Address dated November 8, 2005). The original affidavits in support of the Motion

---

[1] Query whether this argument would be made and counsel accept less on an hourly basis if the offices were located in an area where the fees were considerably less per hour.

for Contempt were completed by Yale students working with the Drug Reform Project in Connecticut. So, although counsel seeks fees for a completely different cost structure of California attorneys, the initial work and the action were commenced in the District of Connecticut with additional counsel located in close proximity. It is also interesting to note that there are a number of issues litigated here on the East Coast, yet the Drug Reform Project chose to voluntarily relocate their main office to the area of Santa Cruz, California.

Therefore, the defendants contend that, in accordance with the law of this Circuit, if the Court grants attorneys fees, they should be in accordance with the reasonable rates established in this Circuit.

### III.    Any Fees Should be Based Upon the District Court of Connecticut or the Second Circuit

The motion for attorney fees includes an alternative request for establishing a rate in this District in the event the Court permits attorney fees. The Affidavit of Attorney Dignam refers to the conversations that he has had with other counsel, but is not directly involved in the award of attorney fees in this District. Although Attorney Dignam provides some guidelines, the courts in the District of Connecticut do not generally allow the generous rate noted in his affidavit. This Court can utilize, as a basis for determining the appropriate rates, the fee awards in prior cases and the Court's familiarity with the rates prevailing in the District. Farbotko v. Clinton

County of  New York, 433 F.3d 204, 209 (2d Cir.2005).    The court in Otero v.

Collligan, No. 3:99cv2378 (WIG), 2006 WL 1438711 (D.  Conn.  May 17, 2006),

provided a number of cases such as the ones that follow in support of a fee far less

than what the plaintiffs have requested.    In Fago v. City of Hartford, No. 3:02CV

1189 (AHN), 2004 WL 1730351, at 2 (D.  Conn.  March 18, 2004), the court awarded

a fee of $275/hour as a reasonable fee in a civil rights action.  In Connecticut State

Dept. of Social Services v. Thompson, 289 F. Supp. 2d 198, 205-06 (D. Conn. 2003)

the District Court awarded fees of $325/hour, but indicated that the District of

Connecticut judges have concluded that an hourly rate of $250 to $300 was the

prevailing market rate of attorneys with a high degree of expertise in their field of

law.  Sabir v.  Jowett, 214 F. Supp. 2d 226, 251 (D. Conn. 2002) concluded that

rates of $250/hour and $275/hour were reasonable in a civil rights case.    Likewise,

in Tsombanidis v. City of West Haven, 208 F. Supp. 2d 263, 275 (D. Conn. 2002),

the court awarded fees based on a rate of $275/hour for a civil rights litigator with 17

years of experience.  Courts in the District of New York have held that the prevailing

rate for experienced attorneys is $175 per hour.    Patterson v. Julian, 250 F. Supp.

2d 36, 45 (N.D.N.Y. 2003) (citing I.B.E. W. Local No. 910 Welfare, Annuity and

Pension Funds ex rel. Love v. Dexelectrics, Inc., 98 F.  Supp. 2d 265, 275 (N.D. N.Y.

2000).  In Local 910, the court specified that the prevailing rates in this district are

$175 per hour for the most experienced attorneys, $125 per hour for attorneys with

four or more years of experience, $100 per hour for attorneys with less than four years experience, and $65 per hour for work done by paralegals. Local No. 910 supra at 275. Just a few months ago. in the case of <u>Access 4 All, Inc., et al. v. Grandview Hotel Limited Partnership</u>, CV 04-4368 (TCP) (MLO), 2006 U.S. Dist. Lexis 29574 (March 23, 2006), the court indicated that the prevailing rates in New York were $250.00 per hour for the firm and $140.00 per hour for local counsel on the case. The court, however, further reduced those rates by 50 percent because the attorneys had other similar actions and the court stated that "if [plaintiff's counsel] is as good as he says he is, he should have been able to litigate this unexceptional case by utilizing the formulaic approach that served him so well in all the similar cases he handled. "Citing <u>Brother</u>, 341 F. Supp. 2d at 1236-1237.

In the instant action, based upon the affidavits submitted Attorney Boyd, while having some trial experience, he has been involved in this area for approximately 8 years although he had some prior experience in the field of labor law; Attorney Bernhardt has an undefined number of years with the ACLU sometime after 1997; and Attorney Berenthal has less than two years in the practice of law after completing a clerkship in 2003-2004 and had been practicing for only a year when the instant motion was filed. Attorney Wolf, who has appeared most frequently in the action, has less than 5 years as counsel with the ACLU, with the majority of his work in 2004 to 2006.

Given the years of practice and the law of this District, it appears that fees ranging from $275.00 for Attorney Boyd, $225.00 for Attorney Bernhardt, $200.00 for Attorney Wolf and $175.00 for Attorney Berenthal would be appropriate in accordance with the case law in this District.  The recent case of <u>Otero</u> awarded attorney fees of $275.00 per hour to an attorney with over 30 years of practice and with excellent credentials.  <u>Otero v. Colligan</u>, No. 3:99CV2378 (WIG), 2006 WL 1438711 (D. Conn. May 17, 2006).  The attorneys in this case argue that they are entitled to greater hourly rates because of their expertise and experience, however, the affidavit with time of counsel indicates numerous hours talking with individuals about the program and needles, syringes and cookers.  As a description of work, counsel indicates that they read many scientific articles regarding the transmission of infectious diseases as part of the research and writing.  It does not follow that on the one hand counsel espouses their expertise while providing an affidavit that contains multiple hours in research not only regarding interpretation but also the very subject area that they contend is within their familiarity.  Given the great amount of research and use of individuals to discuss the issues and practices in the field, the defendants do not agree that counsel is of such a status that his experience would place him in a position equal to a civil litigation – labor counsel with 30 years experience in litigation and other professional areas.  Therefore, the appropriate fees of $275.00 for Attorney Boyd, #250 for Attorney Bernhardt, $200 for Attorney

Wolf, an \$175for Attorney Berenthal are consistent with the fees outlined in the above case law.

## IV.   The Court Should Exclude Hours that are Excessive, Redundant and Unnecessary

In determining the number of hours for which fees should be awarded, the Court should not compensate counsel for hours that are excessive, redundant, or otherwise unnecessary.   Hensley v. Eckerhart, 461 U.S. 424 at 434, 103 S. Ct. 1933 (1983).   If the Court should determine that the plaintiffs' request for compensation includes excessive hours, it "has the discretion to simply deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." Kirsch v. Fleet St. Ltd., 148 F. 3d 149, 173 (2d Cir. 1998) [citing New York Ass'n. for Retarded Children v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983)]

The Court can exclude not only excessive or redundant hours, but also hours dedicated to severable unsuccessful claims.   Quarantino v. Tiffany and Co., 166 F.3d 422, 425 (2d Cir. 1999).

Based upon the affidavit of hours outlined in the Affidavit of Attorney Wolf, the Court can determine, as argued below, that the requested time is excessive for the

motion involving only the clarification, as well as including redundant and severable hours for the Motion for Contempt in which the plaintiffs were not prevailing parties.[2]

A review of the hours listed by the plaintiffs denotes that the impetus and major focus of the court proceedings was the Motion for Contempt. The issue regarding the meaning of injection equipment was a sub-issue with little or no impact upon the initial contempt motion because the claim did not involve the allegation that Bridgeport police officers were illegally seizing items such as cookers or cotton. In the February 3, 2006 Post Trial Memorandum submitted by the plaintiffs, they provide at least two separate arguments concerning the taking of syringes and needles as the improper actions by the Bridgeport police (Exhibit I - Post Trial Memorandum at pages 13 and 34). In these arguments the plaintiffs do not include allegations regarding confiscating cookers and cotton. The plaintiffs also requested that the Court implement three coercive sanctions for compliance (Exhibit J at page 30). None of the requests were granted and there was no evidence before the Court on the Motion for Contempt that would support a violation by the defendants of the January 18, 2001 Order that the defendants improperly confiscated cookers.

The plaintiffs include in the second column of the affidavit of hours submitted by Attorney Wolf for time he contends should be reimbursed for the instant motion to

---

[2] The defendants contend that even the hours defendants outline below for the clarification should be reduced by 25-50% because of the rationale in Access, supra.

clarify.   This reference appears to be in hindsight by the plaintiffs because there are no contemporaneous continuous notations which define specifically hours of the clarification in any of the hearings or matters involving both motions.   In fact, within the memorandum of the plaintiffs they seemingly admit that they randomly selected a percentage of the time for the clarification.   "The records should be detailed enough for the court to separate out time spent on claims on which the party did not prevail, to identify hours that are unnecessary or excessive and to determine if billing judgment was exercised."   Hensley, supra at 434, 437.   In the instant request the plaintiffs, except when actually researching or writing on the issue of clarification, did not keep separate records nor did they calculate time spent except to attribute an arbitrary one quarter of the time to the clarification.

In reviewing the documents related specifically to the clarification of the January, 2001 Order it is clear that the clarification was not formally addressed from a legal perspective until the filing of a Motion on December 1, 2005.  However, in reviewing the records of Adam Wolf in support of the payment of attorney fees, he includes multiple hours that are not related specifically to the clarification.   For instance, during the time period beginning on November 12, 2005 up until November 20, 2005, there was no motion or discussion regarding the clarification yet the plaintiffs have included a request for a portion of the time actually spent preparing for the motion for contempt on November 17, 2005.   In the Motion to

Clarify Injunction dated December 1, 2005 the plaintiffs state that "pursuant to this Court's statement at the November 17, 2005 hearing on plaintiff's motion for contempt, plaintiffs hereby file this motion to clarify the injunction issued by the Court January 18, 2001." None of the hours prior to the hearing on November 17, 2005 amounting to an estimated 16.9 hours for Attorney Wolf, .4 hours for Attorney Berhardt and .2 hours for Attorney Boyd have any relevance to a motion to clarify.

The request for reimbursement of hours of the two remaining counsel should not be included if the court grants an Order for any attorney fees. Attorney Bertenthal was involved early in the discussions concerning the alleged violation and contempt motion. The request for 1.4 hours for her part is duplicative as well as unrelated to the clarification or attorney fees. (Note: Her appearance was entered in the court on December 15, 2005 which was the date of the hearing of the Motion for Contempt.) The request for 3.8 hours for Attorney Bernhardt is likewise not appropriate because her role was duplicative. She was not instrumental in any phase of the clarification and if the argument is that she discussed the issues, there is no expertise from her regarding this specific issue. Any involvement would be duplicative and unnecessary work.

Attorney Boyd's hours up until the hearing on December 15, 2005 should also be denied. Attorney Boyd's contribution appears to be duplicative and consists more of backup to give another perspective on the entire hearing and, thereafter, to the

memorandum written by Attorney Wolf. He requests fees for editing, discussing and traveling. If the Court is inclined to permit any fees as to Attorney Boyd, the defendants contend that the generalized descriptions of work cannot and should not be compensated, nor should the time to travel or sit at counsel table on December 15 be reimbursed as a necessary cost. As to Attorney Boyd, only the hours beginning on December 29, 2005 through May 4, 2006 have a direct bearing on the Motion for Clarification. However, the only input that Attorney Boyd contributed to the Motion was editing and discussing the issues with numerous individuals. This is duplicative and also not sufficient to award high fees. Therefore, his fee should be eliminated or greatly reduced. The defendants argue that if any fees are paid, he should not receive more than the $275.00 per hour for 5.7 hours on consultation noted in the attached breakdown (Exhibit K - Analysis of Fees and Hours of Attorney Boyd). The defendants contend that if the Court is inclined to permit some of the travel noted on December 14 and 15, 2005 as noted in the analysis attached, the fee should be reduced by approximately fifty percent which would be 2 hours. Therefore, the defendants contend that the fee for Attorney Boyd, if granted, should be in the range of $890.00 to $1,440.00.

As to the hours submitted by Attorney Wolf, the plaintiffs have indicated they are not always requesting the full time spent in preparing for the hearings, attending the hearings or discussing issues among counsel. One of the difficulties with the

BMF06083

estimate of time by Attorney Wolf in selecting a percentage of time without a specific basis is that it is generalization and speculation as to the time dedicated to the Motion for Clarification. This type of guesswork should not be permitted, especially in light of the Court's ruling in relation to the Motion for Contempt. The difficulty is that the time spent by plaintiffs' counsel as noted by the affidavit of Attorney Wolf was with the exception of the specific notations of writing the clarification, research for clarification and work with Dr. Heimer also necessary and initiated to prepare for the Motion for Contempt. The application at this time to compensate for those very same hours associated with the contempt is a back door approach to payment of fees that are not compensable. In viewing the fees of Attorney Wolf as outlined by the defendants in Exhibit L, they contend that at the most 102.10 hours can be, in some manner, associated with the Motion for Clarification. If the Court should determine fees are to be granted, then Attorney Wolf should be compensated at a rate of $200.00 for 102.10 hours for $20,420 as attorney fees.[3]

### A.    Travel time

A portion of the time submitted by Attorney Wolf and Attorney Boyd involved hours for travel which the defendants contend until May 2006 was necessary solely to argue the Motion for Contempt. In fact, the original matter was scheduled for the

---

[3] The defendants also contend that the Court can further reduce these fees by 25-50% based upon the above case of Access 4 All, supra, to $10,200 to $15,000.

Motion for Contempt and was not designated to include within the parameters of the hearing a Motion for Clarification. As a part of the hearing on December 15, 2005, the plaintiff introduced Dr. Heimer as a witness regarding the Motion to Clarify. The defendants objected to the testimony and, thereafter, the Court allowed him to testify as to the issue of clarification. His testimony was approximately 15 minutes and consisted of 10 pages of the 209 page transcript of the hearing (Trial Transcript pages 182-191). Additionally, Ms. Robin Clark Smith was called as the witness for the plaintiff and was questioned in regard to the Motion for Contempt as well as the process concerning cookers. Her testimony consisted of 30 pages in the transcript of the Court and, as such, only about one half related to any area that could be considered within the Motion for Clarification (Trial Transcript pages 148-178).

The plaintiff has included, at full hourly rate, the costs of travel for not one but two counsel to fly from California to New York and, thereafter, drive to Connecticut.

In Jennette v. New York, 800 F. Supp. 1165 (1992), the court determined that it was inappropriate to award full pay for travel time because it would assume the attorney never had a minute of uncompensated time and, therefore, the court reduced the compensation to one half of the full hourly rate. Travel time is generally reimbursed at half of the hourly prevailing rate. Patterson v. Julian 250 F. Supp. 2d 36 at 45 (N.D.N.Y. 2003). As noted in the Exhibits above that outline the hours, the defendants contend that the hours, if related to the prior motion and hearing dates,

should not be compensated.  If the Court should determine that any of the hours provided are related to the Motion for Clarification, the defendants request that it reduce the hours by at least 50 percent in accordance with the decisions of courts in this Circuit.

## V.    There is No Basis for a Multiplier in this Action

The plaintiffs counsel has requested a fee enhancement of 1.5 for their representation.  The basis of the request is that the Court clarified the Order to define within injection equipment "coolers and cotton/containers used to mix an injectable controlled substance with a liquid."  Plaintiffs contend that the legal issue in this case was unique and somewhat complicated and, thus, there should be an enhancement of 1.5.

The Supreme Court has severely restricted the court's discretion to adjust the lodestar upward.  Pennsylvania v. Delaware Valley Citizens Council for Clean Air, 478 U.S. 546, 565, 106 S. Ct. 3088 (1987)

In Huntington Branch NAACP v. Huntington, 749 F. Supp. 62, 65 (E.D.N.Y 1990), the court quoted Justice O'Connor's concurring opinion in Pennsylvania v. Delaware Valley Citizens Council, supra, that risk multipliers are permissible as long as the court does not "enhance a fee award any more than necessary to bring the fee within the range that would attract competent counsel."  The quality of representation is generally reflected in the reasonable hourly rate and an adjustment

of the rate should be made only in rare cases where the evidence shows that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was exceptional. <u>Blum v. Stenson</u>, 465 U.S. 886 at 899 (1984).

In the instant action the real issue before the Court was a statutory interpretation that the Court analyzed and determined. Although the plaintiffs argued for the clarification as well as the defendants, there was no overpowering or exceptional decision that led the Court to this conclusion. One of the considerations and rationale for allowing a multiplier is to attract counsel in a case which would not attract competent counsel. This situation is not one in which there was difficulty in finding counsel who would agree to prosecute the matter but, instead, this was an action that the counsel for the plaintiffs have been actively pursuing their mission of the Drug Reform Project section within the National Organization of the American Civil Liberties Union (see plaintiffs affidavits in support of attorney fees). Unlike come civil rights actions, counsel for the plaintiffs did not need the chance of a fee award to encourage them to bring this action as a basis for enhancement. <u>Kyle Erickson v. City of Topeka</u>, 239 F. Supp. 2d 1202 (Dist. of Kansas 2002). Based upon the affidavits in support of this action, the interpretation and extension of the law in regard to drug use and health issues is the mission of the ACLU and, thus, they are not accepting a case in lieu of other work or accepting a risky case but,

instead, they are pursuing the mission of the Drug Reform Project of the ACLU. In Huntington Branch, NAACP, et al v. Town of Huntington, 961 F. 2d 1048 (2d Cir. 1992) the court indicated that enhancement of attorney's fees is unnecessary where plaintiffs secure help from organizations whose very purpose is to provide legal help through salaried counsel to those who themselves cannot afford to pay a lawyer.

Given the nature of the representation by the ACLU, it would be improper under the circumstances to allow a multiplier.

Lastly, the final result, although including within the definition of injection equipment the cooker and cotton, does not dramatically make any changes in the area or past activity of the Bridgeport Police Department because there has not been a finding that officers on any basis stop, detain or arrest because of cookers or cotton. This is simply a further definition and interpretation of the court as to the items utilized and protected by the Connecticut law.

**VI.    The Plaintiffs' Costs Should Be Denied**

The Plaintiffs' counsel has provided a laundry list of items as costs to be associated with the Motion for Clarification and reimbursement. The most glaring problem with the costs is that, for the most part, they are a back door approach to be paid for the costs associated with the Motion for Contempt and the costs the Plaintiffs would be required to bear without reimbursement for the Motion that the Court denied. For instance, the Court scheduled the hearing for the Motion for

Contempt on December 15, 2005. The transcript clearly indicated that the hearing was for testimony concerning the Motion for Contempt (Exhibit C - Ruling at pages 4-5). Thus, under that theory alone, the costs up to the hearing date, for the most part, should be denied. It is also obvious that the plaintiff has included in the costs items that were the direct result of the original Motion for Contempt (i.e. Plaintiffs' travel costs for two counsel along with hotel stay car rental and meals during the time November and December 2005). The costs related to the items on November 14, 2005 through November 23, 2005 relate to the original Motion for Contempt. Part of the costs for the original hearing was the subpoena to Robin Clark-Smith and this subpoena was, in fact, unnecessarily duplicated for the hearing on December 15, 2005. Therefore, the defendants contend that the costs beginning on November 14, 2005 up to and including the costs for December 18, 2005 should be denied in their entirety because they were incurred for the original Motion for Contempt. The defendants also contend that the costs which were incurred for the Motion for Contempt, as well as the Motion for Clarification, should be substantially reduced. The transcript costs that plaintiffs include involves the entire day of hearing on December 15, 2005, yet the total testimony in the 209 page transcript consisted of approximately 40 pages of testimony of Dr. Heimer and Robin Clark-Smith which would amount to approximately $156.00 for that portion as compared to $612.15 that is requested by counsel. Even if you consider any argument of counsel, the hearing

portion attributable to the clarification did not encompass more than a third of the days activities.  Further, counsel includes expenses in May for three days in the area including a hotel cost for two nights in Stamford that far exceeded the costs noted for accommodations at an earlier date in New Haven of approximately $240.00 per night as well as meals, taxis, and gas amounting to $544.83 resulting in a total cost of  $1,027.38.  This figure is not only out of line considering the dual nature of the motions argued to the Court on May 12, 2006, but is inflated with costs and a visit with friends in the Stamford area.  If the Court is inclined to permit such costs, the defendants contend that, at a minimum, the costs should be reduced by fifty percent for a total of $513.69 in costs while in Connecticut.  Additionally, the airfare of $517.31 for the May hearing should be reduced by a minimum of fifty percent to $258.65 if the Court determines that this cost is reimbursable at all.

A perfect example of the excessive nature of the plaintiffs costs is the request for reimbursement of meals while preparing the motion for attorney fees.  These charges exemplify the plaintiffs efforts to go beyond what was ever intended in the enactment of 42 U.S.C. 1988 to encourage lawyers to undertake representation of those unable to afford counsel or to encourage counsel to accept the risk.

Based upon the above, the defendants request that the Court deny reimbursement of costs amounting to $4,163.55.  In the alternative, if the court determines that some of the costs are reimbursable, the defendants request that the

Court restrict the costs to a portion of the costs incurred after the December 15, 2005 hearing to permit no more than fifty percent of the costs noted from May 3, 2006 until June 9, 2006 for a total of $1,091.36.

## CONCLUSION

Based upon the above, the Defendants contend that no attorney fees should be awarded to the plaintiffs as "prevailing parties."

If the Court is inclined to award any attorney fees and costs, the defendants contend the request should be limited to those hours and costs related solely to the Motion for Clarification as argued above. Any award should be based upon the reasonable hours as defined by the courts in this district and not related to the fees in California.

Given the argument above, the defendants contend that the fees would be substantially less than those set forth by the plaintiffs such that only the hours of Attorney Boyd and Attorney Wolf would be considered for amounts of $20,600 for Attorney Wolf and in the range of $880 to $1300 for Attorney Boyd.

THE DEFENDANTS

By: _____

Barbara Brazzel-Massaro
Associate City Attorney
OFFICE OF THE CITY ATTORNEY
999 Broad Street - 2nd Floor
Bridgeport, CT  06604
Telephone #203/576-7647
Fed.  Bar No.  05746

## CERTIFICATION

This is to certify that a copy of the foregoing "Memorandum in Opposition to

the Motion for Attorney Fees" has been mailed, postage prepaid, on this 28th day of

January, 2006 to:

**Graham Boyd, Esq.**
**Rebecca Bernhardt, Esq.**
**Adam Wolf, Esq.**
**1101 Pacific Avenue, Suite 333**
**Santa Cruz, CA  955060**

_____
Barbara Brazzel-Massaro

BMF06083