
EXHIBIT
J

GRAHAM A. BOYD (CBN 18419)
REBECCA BERNHARDT (PHV 0616)
ADAM B. WOLF (PHV 0617)
ALYSE BERTENTHAL (PHV granted without number)
American Civil Liberties Union
    Drug Law Reform Project
1101 Pacific Avenue, Ste. 333
Santa Cruz, CA 95060
Telephone: (831) 471-9000
Fax: (831) 471-9676

Attorneys for Plaintiffs

| | |
|---|---|
| JOHN DOE, JOHN ROE, & CONNECTICUT HARM REDUCTION COALITION, <br><br> Plaintiffs, <br> vs. <br><br> BRIDGEPORT POLICE DEPARTMENT & ANTHONY ARMENO, Acting Chief of the Bridgeport Police Department, in his official capacity only, <br><br> Defendant. | Case No. 3-00-cv-2167 (JCH) <br><br> **PLAINTIFFS' POST-TRIAL BRIEF IN SUPPORT OF MOTION FOR CONTEMPT** <br><br><br> **Court: Hon. Janet C. Hall** <br> **Filed: February 3, 2006** |

This Court issued a permanent injunction in January 2001 that clearly prohibits Bridgeport Police Department ("BPD") officers from confiscating fewer than 30 syringes or Bridgeport Syringe Exchange ("Exchange") identification cards. The injunction also clearly prohibits BPD officers from seizing an individual based solely on his participation in the Exchange. However, the testimony elicited during this contempt proceeding established that BPD officers have flouted these clear proscriptions. Officers have continued to confiscate syringes and identification cards, in addition to seizing individuals upon exiting the Exchange. The evidence also demonstrates that

| BPD actions discussed in *year 2000* declarations in support of plaintiffs' application for injunction | Testimony regarding BPD's post-injunction actions in support of plaintiffs' motion for contempt |
|---|---|
| "[BPD officers] consistently . . . take away their injection equipment, both clean and dirty . . . . [U]sers have told me that police will take their injection equipment away from them, whether it is clean or dirty, and not even arrest them." (Kinzly Decl. (Dkt. No. 6), at ¶¶ 8-9; Clark-Smith Decl. (Dkt. No. 8), at ¶¶ 7, 8; Doe Decl. (Dkt. No. 10), at ¶¶ 7, 16-17.) | BPD officers confiscated syringes from Mr. Roe 6 and two of his friends, Tr. (Dec. 15, 2005), at 43:8-11, 43:22 – 44:2; BPD officers confiscated a syringe from Mr. Roe 6, *id.* at 42:9-17; BPD officers confiscated syringes from Mr. Doe 4, *id.* at 78:24 – 79:1-8; BPD officers confiscated syringes from Mr. Roe 5 and his friend, *id.* at 107:19-24; BPD officers confiscated syringes from Mr. Roe 5's HIV-positive friend, *id.* at 109:11-24; BPD officers confiscated syringes from Mr. Doe 11, *id.* at 132:9-15; *see also id.* at 158:20–23 (Ms. Clark-Smith aware of BPD officers confiscating her clients' syringes). |
| "[P]olice consistently rip up their user identity cards . . . ." (Kinzly Decl. (Dkt. No. 6), at ¶¶ 8-9.) | BPD officers confiscated Exchange identification card from Mr. Doe 4, *id.* at 78:24 – 79:1-8; BPD officers confiscated Exchange identification card from Mr. Doe 11, *id.* at 132:13; *see also id.* at 158:24 – 159:2 (Ms. Clark-Smith aware of BPD officers confiscating her clients' Exchange identification cards). |
| BPD officers interfere with Exchange clients' ability to use the Exchange by hovering close to the Exchange and threatening to arrest clients for being near the Exchange and using the Exchange. Doe Decl. (Dkt. No. 10), at ¶ 7. | Mr. Doe 4 seized by BPD officers solely because he emerged from the Exchange van, *id.* at 76:17-21, 99:5-7; Mr. Doe 4 seized by BPD officers solely because he emerged from the Exchange van, *id.* at 78:13-23, 94:25 – 95:2; Mr. Roe 5 seized by BPD officers solely because he emerged from the Exchange van, *id.* at 106:10-24; Mr. Roe 5 seized by BPD officers solely because he emerged from the Exchange van, *id.* at 108:13 – 109:7 |

The Court's injunction might have ceased BPD officers' practice of *arresting* IDUs for possessing syringes, but otherwise the officers have acted as if the injunction were not in place.

Second, defendants continue to insist on discussing the legal rights of Exchange clients at the expense of mentioning that the Court's injunction applies with equal force to IDUs in Bridgeport who are not Exchange participants. Defs. Exh. 509. As discussed above, the distinction between

employee about BPD's confiscation of his friend's syringes).[4] In fact, Ms. Clark-Smith was able to recall the names of two particular officers who had allegedly violated the injunction because she had heard multiple complaints of these officers violating the injunction. *Id.* at 161:6-14.

### F. Summary of Select Violations of Court's Injunction

The evidence adduced at the contempt trial well exceeds the quantum of proof to "demonstrate a reasonable certainty that a violation occurred." *Levin*, 277 F.3d at 250. This evidence reveals not only that a violation has occurred, and not only that many violations have occurred, but that BPD officers have violated the injunction multiple times during the majority of each of the respective incidents described above (e.g., stopping an individual based on his emerging from the Exchange and then confiscating the syringes he received from the Exchange). In fact, BPD officers sometimes mocked plaintiff class members, the Exchange, and ultimately, this Court, during their contumacy.

Summarizing the testimony from plaintiffs' witnesses, provided in more detail above, the evidence demonstrates that BPD officers have repeatedly violated the injunction in the following ways:

- Confiscating syringes, including, but not limited to, throwing them to the ground, throwing them in vacant lots, throwing them down the sewer, and forcing Exchange clients to break their own syringes;
- Confiscating Exchange identification cards, including, but not limited to, taking them without returning them and forcing Exchange clients to rip up their own identification cards; and
- Seizing people because of their use of the Exchange van.

Faced with this significant evidence of having violated the injunction, defendants' cross-examination strategy was to revisit the incidents described during direct examination in an attempt to elicit contradictions in the testimony, often asking questions that jumped back and forth among

---

[4] In fact, some Exchange staff were so concerned about defendants' violations of the injunction that they encouraged their clients to discuss the violations with plaintiffs' counsel. *Id.* at 53:3-23 (Mr. Roe 6); *id.* at 99:9 – 100:3 (Mr. Doe 4).

Plaintiffs' Post-Trial Brief in Support of Motion for Contempt - 13