GRAHAM A. BOYD (CBN 18419)
REBECCA BERNHARDT (PHV 0616)
ADAM B. WOLF (PHV 0617)
American Civil Liberties Union
    Drug Law Reform Project
1101 Pacific Avenue, Ste. 333
Santa Cruz, CA 95060
Telephone: (831) 471-9000
Fax: (831) 471-9676


Attorneys for Plaintiffs


| | |
|---|---|
| JOHN DOE, JOHN ROE, & CONNECTICUT HARM REDUCTION COALITION, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| BRIDGEPORT POLICE DEPARTMENT & ANTHONY ARMENO, Acting Chief of the Bridgeport Police Department, in his official capacity only, | ) ) ) ) ) |
| Defendants. | ) ) ) ) |

Case No. 3-00-cv-2167 (JCH)

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEY'S FEES**

**Court: Hon. Janet C. Hall**
**Filed: August 10, 2006**
**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

INTRODUCTION............................................................................1

ANALYSIS..................................................................................1

I.     PLAINTIFFS ARE "PREVAILING PARTIES" PURSUANT TO
       SECTION 1988 BECAUSE THEY SUCCESSFULLY LITIGATED A
       CONTESTED ISSUE TO EXPAND THE SCOPE OF THE 2001
       INJUNCTION TO PROTECT AGAINST POLICE HARASSMENT
       THAT DEFENDANTS HAD STATED WAS BOTH PERMISSIBLE
       AND OCCURRING.................................................................1

II.    THE HOURLY RATES SOUGHT BY PLAINTIFFS AND BILLABLE
       HOURS EXPENDED BY PLAINTIFFS' COUNSEL ARE
       SUFFICIENTLY DOCUMENTED AND OTHERWISE
       REASONABLE....................................................................3

       A.     The Billable Hours For Which Plaintiffs Seek to Recover Fees Are
              Only Those Hours That Were Expended on Litigating the Motion
              to Expand the Scope of the Injunction, And Are Neither
              Redundant Nor Excessive.............................................3

       B.     Plaintiffs Have Established Reasonable Hourly Rates in the Forum
              District By Way of Declarations From Respected Attorneys Who
              Practice in the District..................................................5

       C.     The Court Should Award Fees Based on Hourly Rates in Counsel's
              Home District Because There Are No Similarly Situated Experts In
              the Forum District and Counsel Used Their Expertise in
              Expanding the Injunction...............................................7

III.   AN UPWARD ADJUSTMENT IS APPROPRIATE WHERE
       PLAINTIFFS' COUNSEL SUCCESSFULLY LITIGATED A NOVEL
       ISSUE FOR AN "UNDESIRABLE CASE," AND ALL OTHER
       RELEVANT FACTORS LIKEWISE MILITATE IN FAVOR OF AN
       UPWARD ADJUSTMENT.......................................................9

IV.    PLAINTIFFS' REQUESTED COSTS ARE SUFFICIENTLY
       DOCUMENTED AND REASONABLE.........................................9

V.     PLAINTIFFS SEEK FEES AND COSTS FOR WORK ON THIS
       MOTION BETWEEN JUNE 28, 2006, AND THE FILING OF THIS
       REPLY BRIEF.................................................................10

CONCLUSION.............................................................................10

## INTRODUCTION

Defendants' kitchen-sink approach to opposing plaintiffs' fees motion does not withstand scrutiny. Although defendants argue that plaintiffs are not "prevailing parties" pursuant to 42 U.S.C. § 1988 ("Section 1988") because the Court did not alter the legal relationship between the parties when it expanded its previously-issued injunction, the expansion of the injunction protects class members against certain future arrest that defendants had stated was both permissible and occurring. Moreover, plaintiffs' declarations establish the relevant hourly billing rates and time reasonably expended by counsel litigating the motion to modify the injunction and motion for attorney's fees. Plaintiffs therefore request that their fees motion be granted in its entirety.

## ANALYSIS

I.     **PLAINTIFFS ARE "PREVAILING PARTIES" PURSUANT TO SECTION 1988 BECAUSE THEY SUCCESSFULLY LITIGATED A CONTESTED ISSUE TO EXPAND THE SCOPE OF THE 2001 INJUNCTION TO PROTECT AGAINST POLICE HARASSMENT THAT DEFENDANTS HAD STATED WAS BOTH PERMISSIBLE AND OCCURRING.**

Prior to the issuance of the Court's Order modifying the injunction, defendants had argued that they could search, stop, arrest, or otherwise punish an individual for possessing objects like cookers and cottons; the Court's modified injunction now proscribes such conduct. Accordingly, the issuance of the Court's expanded 2006 injunction materially altered the legal relationship between the parties, and thus plaintiffs are prevailing parties for purposes of Section 1988.

A plaintiff is deemed a "prevailing party" pursuant to Section 1988 where a court order changes the legal relationship between the parties. *See, e.g., LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 757 (2d Cir. 1998). There is no question that, just as the Court's 2001 injunction changed the legal relationship between the parties, the 2006 injunction does the same.

Prior to plaintiffs filing their motion to expand the scope of the injunction to include objects other than syringes and needles, defendants repeatedly affirmed their understanding that the 2001

1

injunction did not prevent them from arresting or otherwise penalizing people for possessing injection equipment besides syringes and needles. *See, e.g.,* Defs' Opp. to Pltfs.' Mot. for Contempt. [Dkt. No. 55], at 7 (stating that, under the 2001 injunction, BPD could arrest an individual when "the main thrust" of the arrest was for possessing a cooker); *see also id.* at 8-9 (arguing that BPD officers could arrest plaintiffs for possessing cookers and chastising "Mr. John Roe 2 [for being] under the impression that he can possess a 'cooker' as well as the needles"). At the November 17, 2005, hearing, the Court asked defendants' counsel why, after the issuance of the Court's 2001 injunction, the City was continuing to maintain that it could charge someone for possessing fewer than 31 syringes. Tr. (Nov. 17, 2005), at 40:1-20. The City's answer regarding its understanding of whom it could arrest under state law was illuminating, as it underscored the need for plaintiffs to secure the expanded injunction that the Court issued in 2006:

> [I]t would depend on the circumstances. If you have items . . . that . . . would be the whole set of equipment, not so much the needles themselves. . . . It would be the cookers that go with it. . . . [S]ometimes they have alcohol pads or things that are there. Sometimes there are other pieces of equipment that would be part of it . . . . I think a needle and syringe they would not charge.

Tr. (Nov. 17, 2005), at 40:21 – 41:7. Later in the argument, the City partially justified the arrest of a class member because he possessed a cooker in addition to a syringe. *Id.* at 41:25 – 42:11 (arguing that the class member's arrest was not illegal because, in part, "there were things other than just the needles and syringes, a blue set of plastic spoons [cookers] containing . . . residue"). Accordingly, not only did defendants argue that they could, in the future, arrest somebody for possessing objects like cookers and cottons, but they justified past arrests on the possession of such objects.

Issuing an injunction that now prohibits BPD from arresting or otherwise harassing a class member for conduct that defendants had previously maintained was illegal, the Court clearly altered the legal relationship between the parties. Accordingly, plaintiffs are prevailing parties for securing the issuance of the expanded injunction. *Cf. Warnock v. Archer*, 397 F.3d 1024, 1026 (8th Cir. 2005)

2

("Mr. Warnock . . . sought and obtained a broader injunction . . . . We conclude that this success

qualifies him as a prevailing party . . . .").[1]

## II.     THE HOURLY RATES SOUGHT BY PLAINTIFFS AND BILLABLE HOURS EXPENDED BY PLAINTIFFS' COUNSEL ARE SUFFICIENTLY DOCUMENTED AND OTHERWISE REASONABLE.

### A.     The Billable Hours For Which Plaintiffs Seek to Recover Fees Are Only Those Hours That Were Expended on Litigating the Motion to Expand the Scope of the Injunction, And Are Neither Redundant Nor Excessive.

Defendants ground much of their opposition in their misunderstanding that plaintiffs seek

fees for their counsel's time spent litigating issues other than the modification of the injunction.

However, plaintiffs have carefully excluded time devoted to litigating the contempt motion

exclusively, and, in the exercise of sound billing judgment, they have further reduced the number of

hours for which they seek fees.

Plaintiffs should recover fees for all time "reasonably expended on the litigation." *Hensley v.

Eckerhart*, 461 U.S. 424, 433 (1983). As is clear from Attorney Wolf's declaration [Dkt. No. 111],

plaintiffs have dutifully set forth the number of hours counsel expended on their efforts to expand

the scope of the injunction. Except to argue that some of the requested hours were related

exclusively to the contempt motion—a contention that is refuted below—defendants do not appear

to take issue with any particular time entry for Attorney Wolf. As for the time entries for Attorneys

Boyd, Bernhardt, and Bertenthal, defendants argue that counsel's work was merely duplicative and

unnecessary. However, it is apparent from the nature of their assistance with the litigation—as set

---

[1]        The only case defendants cite in support of their argument that plaintiffs are not prevailing parties, *Wilson v. Mayor & Board of Alderman of St. Francisville*, 135 F.3d 996 (5ᵗʰ Cir. 1998), is inapposite. In *Wilson*, the plaintiffs were not prevailing parties because the district court ruled for the *defendants* and adopted the voting scheme proposed by the *defendants*. *Id.* at 998-99.

3

forth in Attorney Wolf's June 2006 declaration, at ¶ 7—plaintiffs' counsel's work was not at all duplicative.[2]

Nor do plaintiffs seek to recover the time their counsel spent litigating the contempt motion exclusively. They do not request fees for the briefing of the contempt motion—either the briefing prior to the December 2005 trial or the post-trial brief—even though plaintiffs developed their initial arguments regarding the modification motion in their reply brief in support of their contempt motion. Moreover, because the contempt motion and modification issues were intertwined for a few weeks in the second half of November and first half of December, plaintiffs have sought to recover only one-quarter of counsel's time when working on issues that could not be easily separated out between the contempt motion and the modification motion.[3] *Cf. Salpaugh v. Mornoe Cmty. Hosp.,* 4 F.3d 134, 146 (2d Cir. 1993) (somewhat reducing, in Section 1988 fees motion, the billable hours that did not differentiate between time spent on successful and unsuccessful claims).

---

[2]    For instance, it was invaluable to plaintiffs for Attorney Boyd to conduct mock witness exams with Attorney Wolf before calling Dr. Heimer, an expert witness, and Ms. Clark-Smith, a City of Bridgeport employee, as witnesses. *See* Wolf Decl. [Dkt. No. 111], at p.5 (second full entry in table). Likewise, Attorney Bernhardt was instrumental in providing advice at counsel's moot for the May 2006 oral argument on plaintiffs' motion to modify the injunction. *See id.* at 7 (seventh and twelfth full entries in table).

        To the extent that defendants contest the need for two attorneys to attend the portion of the December 2005 trial where plaintiffs examined witnesses to establish a record in support of their motion to modify the injunction, plaintiffs' counsel's experience is that it is common to have at least two attorneys conduct a trial; in fact, defendants had co-counsel sit at counsel table with Attorney Brazzel-Massaro for most of the December 2005 trial. Plaintiffs do not seek to recover the time spent by a third attorney, Attorney Bertenthal, at the trial, nor do they seek to recover the time of an attorney who sat at counsel table with Attorney Wolf during the November 17, 2005, hearing.

[3]    For instance, the injunction-modification issue constituted a significant portion of the oral argument at the November 17, 2005, hearing. Likewise, plaintiffs, in their modification motion, and the Court, in its Order granting said motion, relied significantly on the December 15, 2005, testimony of Dr. Heimer and Ms. Clark-Smith, even though some of the testimony from that day related solely to the contempt motion. Accordingly, plaintiffs seek only 25% of their time devoted to the November 17 hearing and December 15 trial, and they do not seek to recover fees for any of their time devoted to the second day of the December 2005 trial.

4

Just as prevailing parties can recover fees for time their counsel devoted to pre-litigation investigation, as well as to discovery in anticipation of filing a summary-judgment motion, *see, e.g.,* *Webb v. Bd. of Educ. of Dyer County*, 471 U.S. 234, 250 (1985) (Brennan, J., concurring in part and dissenting in part), plaintiffs can unquestionably recover for their counsel's time adducing the testimony of witnesses to lay the foundation for their modification motion. This testimony was crucial to proving: (1) how a cooker is an object used in parenterally injecting a controlled substance; (2) that infectious diseases can be spread by re-using another's cooker, cotton, and other injection equipment; and (3) that the Exchange provides cookers to its clients for this purpose.[4] *See* Pltfs' Mot. for Atty's Fees [Dkt. No. 111], at 5 n.3; *Hensley*, 461 U.S. at 433 (allowing fees for counsel's hours "reasonably expended on the litigation").

Accordingly, plaintiffs seek fees solely for their counsel's time that was not redundant and was otherwise important in prevailing on their motion to modify the 2001 injunction.

### B. Plaintiffs Have Established Reasonable Hourly Rates in the Forum District By Way of Declarations From Respected Attorneys Who Practice in the District.

Plaintiffs' declarants, who are respected counsel in the forum district, have provided the most up-to-date prevailing hourly rates for counsel in Connecticut who are of the skill, experience, and reputation comparable to plaintiffs' counsel—i.e., counsel who have served as judicial law clerks to federal judges and who specialize in a specific area of law. Plaintiffs request, and case law requires, that their counsel's fees be determined using these prevailing market rates.

The Court should award fees based on rates that are "in line with those prevailing in the community for . . . lawyers of reasonably comparable skill, experience, and reputation." *Blum v.*

---

[4]      Prior to Ms. Clark-Smith's testimony, the City had denied that its exchange provides cookers to its clients. *See* Defs' Opp. to Pltfs' Mot. for Contempt. [Dkt. No. 55], at 10 ("The Memorandum of this Court does not exempt any other drug paraphernalia under the Program other than 'hypodermic syringes and needles.' In fact the Program distributes only the hypodermic needles and syringes.") (internal citation omitted).

5

*Stenson*, 465 U.S. 886, 895 n.11 (1984). After plaintiffs inquired of Attorney Dignam the prevailing

market rates for attorneys of plaintiffs' counsel's skill, experience, and reputation, Attorney Dignam,

wanting to provide an accurate and up-to-date answer, talked with her friends and colleagues who

practice in Connecticut. Specifically, Attorney Dignam, a clinical professor of law at the Yale Law

School, ascertained the hourly rates charged by Connecticut counsel who have had federal clerkships

and who have a particular legal specialization. *See* Decl. of Brett Dignam [Dkt. No. 111], at ¶ 6. She

sets forth such rates in her declaration. *See id.* at ¶ 7; *see also* Declaration of Antonio Ponvert III

[Dkt. No. 111], at ¶ 3 (providing the same rates as Attorney Dignam).

    All of plaintiffs' counsel have served as judicial law clerks to federal judges, and 100 percent

of their litigation concerns drug-policy issues. Decl. of Graham Boyd [Dkt. No. 111], at ¶¶ 4-11.

Counsel and their colleagues at the ACLU Drug Law Reform Project have more litigation

experience regarding syringe-exchange issues than any other attorneys in the country. *Id.* at ¶¶ 4-5.

They are, at the very least, deserving of the hourly rates charged by Connecticut counsel who have

served as judicial law clerks to federal judges and who specialize in a particular field.

    Although the declarations of Attorneys Dignam and Ponvert establish such rates, defendants

argue for lower hourly rates based on a pastiche of district court opinions—most of which are

unpublished, have been reversed by the court of appeals, are based on rates charged by counsel in

upstate New York, and/or are based on rates that are at least seven years old. *See, e.g., Fago v. City of*

*Hartford*, 2004 WL 1730351 (D. Conn. March 18, 2004); *Patterson v. Julian*, 250 F. Supp. 2d 36

(N.D.N.Y. 2003), *rev'd, Patterson v. City of Utica*, 370 F.3d 322, 338 (2d Cir. 2004) (reversing the

judgment of the district court, including the awarding of fees); *I.B.E.W. Local No. 910 Welfare,*

*Annuity, & Pension Funds v. Dexelectrics, Inc.*, 98 F. Supp. 2d 265, 275 (N.D.N.Y. 2000) (citing hourly

rates charged in upstate New York in 1999). Furthermore, none of defendants' cases purports to

establish the hourly rates charged by Connecticut counsel who have clerked for federal judges and

6

who specialize in a particular field. Whatever the hourly rates may be for Connecticut counsel—let

alone for attorneys in Utica, New York—who were not judicial law clerks and who do not have a

particular specialization, plaintiffs have provided declarations regarding up-to-date rates for

attorneys with "comparable skill, experience, and reputation."[5]

  Accordingly, the Court should find the hourly rates for Connecticut lawyers of the skill,

experience, and reputation comparable to that of plaintiffs' counsel to be as follows: $375/hour for

Attorney Boyd, $315/hour for Attorney Bernhardt, $275/hour for Attorney Wolf, and $230/hour

for Attorney Bertenthal.

> **C. The Court Should Award Fees Based on Hourly Rates in Counsel's Home District Because There Are No Similarly Situated Experts In the Forum District and Counsel Used Their Expertise in Expanding the Injunction.**

  If the Court awards fees based on the up-to-date prevailing market rates for comparable

Connecticut counsel, as specified in the declarations of Attorneys Dignam and Ponvert, then

plaintiffs will forego their request to recover fees based on the prevailing rates in counsel's home

district. However, if the Court finds that Connecticut's prevailing hourly rates for counsel with

similar skill, experience, and reputation to plaintiffs' counsel are lower than those reported by

plaintiffs' declarants, then plaintiffs request fees based on California rates because plaintiffs' counsel

used their expertise, unavailable in Connecticut, when litigating the motion to modify the injunction.

  Defendants do not dispute the hourly rates set forth in Attorney Weissglass' declaration for

counsel in the Northern District of California, but instead argue that plaintiffs are not entitled to

---

[5] Moreover, defendants argue for a rate that is lower than the prevailing rate in Connecticut based on the reasoning of an unpublished and out-of-district case, *Access 4 All, Inc. v. Grandview Hotel Limited Partnership*, 2006 WL 566101, at \*4 (E.D.N.Y. March 3, 2006), where the court awarded fees based on a lower-than-prevailing hourly rate due to the "garden variety nature of this action" and the fact that counsel had merely used the same boilerplate pleadings in that case as they had in many identical cases they had filed in other jurisdictions. Unlike the issues in *Access for All*, plaintiffs' motion to modify the injunction involved a matter of first impression. Plaintiffs were certainly unable to file boilerplate pleadings, and the Court was initially skeptical of plaintiffs' novel position prior to briefing. *See* Tr. (May 7, 2006), at 25:7 – 29:11; Tr. (Nov. 17, 2005), at 7:14 – 9:15.

7

fees based on the rates counsel charge in their home district. Conspicuously absent from

defendants' argument, however, is well-established case law, cited in plaintiffs' motion, that plaintiffs

are entitled to fees charged in their home district—outside the forum district—where their expertise

was unavailable in the forum district. *See, e.g., Arbor Hill Concerned Citizens Neighborhood Ass'n v. County

of Albany*, 369 F.3d 91, 96 (2d Cir. 2004) (per curiam).

Plaintiffs possess expertise in drug-policy litigation, including syringe-exchange litigation,

that was both unavailable among Connecticut counsel and useful in litigating the motion to modify

the injunction. *See* Pltfs' Mot. for Atty's Fees, at 11-12 (citing declarations). This situation warrants

the awarding of fees based on the hourly rates charged in plaintiffs' counsel's home district. *Cf.

Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983) (Breyer, J.) (awarding fees based on hourly rates from

out-of-state counsel's home district where action involved complex labor-law issues and there was

no evidence that expert labor-law counsel was available in forum district); *Sabatini v. Corning-Painted

Post Area Sch. Dist.*, 190 F. Supp. 2d 509, 514 (W.D.N.Y. 2001) (awarding fees based on rates from

out-of-district counsel's home district where declarations established that counsel with expertise in

special-education law was not available in the forum district).

Accordingly, the Court should award fees based on the reasonable hourly rates for lawyers of

the skill, experience, and reputation similar to plaintiffs' counsel as follows: $450/hour for Attorney

Boyd, $370/hour for Attorney Bernhardt, $290/hour for Attorney Wolf, and $250/hour for

Attorney Bertenthal.

**III.     AN UPWARD ADJUSTMENT IS APPROPRIATE WHERE PLAINTIFFS'
COUNSEL SUCCESSFULLY LITIGATED A NOVEL ISSUE FOR AN
"UNDESIRABLE CASE," AND ALL OTHER RELEVANT FACTORS
LIKEWISE MILITATE IN FAVOR OF AN UPWARD ADJUSTMENT.**

The Court may upwardly adjust the lodestar figure based on the twelve *Hensley* factors.

*Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94, 98 (2d Cir. 1997); *see also Hensley*, 461 U.S. at 430 n.3.

Although defendants claim that the Court should not upwardly adjust the lodestar whenever the

8

ACLU represents a plaintiff class, *see* Defs' Opp. to Pltfs' Mot. for Atty's Fees, at 21-22, there is no

such rule, and every *Hensley* factor militates in favor of upwardly adjusting the lodestar.

Contrary to defendants' remonstrations, the Court has discretion to upwardly adjust the

lodestar when plaintiffs' counsel work at a non-profit organization. *See, e.g., Wilkinson v. Forst*, 729 F.

Supp. 1416, 1418-20 (D. Conn. 1990) (Cabranes, J.) (upwardly adjusting lodestar where plaintiffs

were represented by counsel working at Connecticut Civil Liberties Union); *see also Skinner v. Uphoff*,

324 F. Supp. 1278, 1287-88 (D. Wy. 2004) (same). Furthermore, as plaintiffs demonstrated in

their fees motion, all of the *Hensley* factors militate in factor of upwardly adjusting the lodestar figure.

*See* Pltfs' Mot. for Atty's Fees, at 13-15. An upward adjustment is especially appropriate here, where

plaintiffs prevailed on a difficult issue of first impression, *see id.* at 14, and where counsel represented

a particularly undesirable plaintiff class—a class of injection drug users—*see id.* at 15.[6] Accordingly,

plaintiffs request that the Court upwardly adjust the lodestar by a modest factor of 1.5.

## IV.    PLAINTIFFS' REQUESTED COSTS ARE SUFFICIENTLY DOCUMENTED AND REASONABLE.

Defendants ask the Court to strike all of plaintiffs' costs, notwithstanding the fact that each

and every one of the itemized costs for which plaintiffs seek reimbursement are the type of costs

that counsel would charge to a fee-paying client. *LeBlanc-Sternberg*, 143 F.3d at 763 (noting that

recoverable costs in civil-rights actions "include those reasonable out-of-pocket expenses incurred

by attorneys and ordinarily charged to their clients"); *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*,

818 F.2d 278, 283 (2d Cir. 1987); *Hall v. Lowder Realty Co., Inc.*, 263 F. Supp. 2d 1352, 1371 (M.D.

Ala. 2003) (awarding costs to out-of-state counsel for air travel, car rental, and hotel expenses,

---

[6]    To the extent that defendants contend that an upward adjustment is inappropriate because the Court's order did not alter the legal relationship between the parties, see *supra* Part I (demonstrating that plaintiffs are prevailing parties because the Court's order modifying the injunction altered the legal relationship between the parties).

among other costs, incurred for attending proceedings in forum state).[7]  Accordingly, plaintiffs

request that their costs be granted in full.[8]

### V.    PLAINTIFFS SEEK FEES AND COSTS FOR WORK ON THIS MOTION BETWEEN JUNE 28, 2006, AND THE FILING OF THIS REPLY BRIEF.

As detailed in the attached declaration from Attorney Wolf, Attorney Boyd has devoted 1.3

hours and Attorney Wolf has devoted 24.0 hours to plaintiffs' fees motion between June 28, 2006,

and the filing of this reply brief. *See* Wolf Decl. (signed August 9, 2006), at ¶¶ 5-6 (noting that

plaintiffs have voluntarily decreased Attorney Wolf's hours from 29.4 to 24.0); *see also* Pltfs' Mot. for

Atty's Fees, at 16 n.10 (stating that plaintiffs' opening fees brief sets forth plaintiffs' fees through

June 27, 2006, and advising that plaintiffs would supplement their initial monetary request with the

fees and costs they subsequently incurred in litigating this fees motion).  Plaintiffs request these

hours be added to those delineated in their opening brief in support of their fees motion.

Additionally, between June 28, 2006 and the filing of this reply brief, plaintiffs have incurred

costs associated with litigating their fees motion, but they have elected to forego recovery of those

costs. *See* Wolf Decl., at ¶ 7.

### CONCLUSION

Accordingly, plaintiffs respectfully request that the Court grant the motion for attorney's

fees and costs in the amount of $92,467.05.

---

[7]       These costs awarded in *Hall* were in addition to the attorney's fees awarded for time spent by out-of-state counsel traveling to court hearings.  263 F. Supp. 2d at 1363.

[8]       Plaintiffs will not respond to all of defendants' arguments relating to plaintiffs' specific costs, but they respond to a few to highlight how defendants' contentions are not supported by the factual record.  First, plaintiffs' counsel spent two nights, as opposed to one night, in Stamford prior to the May 2006 hearing as a cost-saving measure.  *See* Decl. of Adam B. Wolf (signed Aug. 9, 2006), at ¶ 4. Second, defendants contend that plaintiffs' costs are higher than necessary because counsel had dinner with a friend on May 11, 2006; however, it is clear from plaintiffs' supporting declaration, *see* Wolf Decl. [Dkt. No. 111], at p.10 (16th full entry in chart), that plaintiffs have sought reimbursement for counsel's meal only, and not for that of his friend.  Third, it is common practice to charge a client for counsel's reasonably-priced dinner if counsel orders food to eat at his or her desk because counsel is working through the evening on a matter for the client.

10

Dated: August 10, 2006                    Respectfully submitted,

                                          Adam B. Wolf
                                          Graham A. Boyd
                                          Rebecca Bernhardt
                                          Alyse Bertenthal
                                          AMERICAN CIVIL LIBERTIES UNION
                                                  DRUG LAW REFORM PROJECT
                                          1101 Pacific Ave., Suite 333
                                          Santa Cruz, CA  95060
                                          Telephone:  (831) 471-9000
                                          Fax:  (831) 471-9676


                                          By: _____
                                              Adam B. Wolf (PHV 0617)
                                          Attorneys for Plaintiffs


11

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| JOHN DOE, JOHN ROE, & CONNECTICUT HARM REDUCTION COALITION,<br><br>Plaintiffs,<br><br>vs.<br><br>BRIDGEPORT POLICE DEPARTMENT & ANTHONY ARMENO, Acting Chief of the Bridgeport Police Department, in his official capacity only,<br><br>Defendants. | ) Case No. 3-00-cv-2167 (JCH)<br>)<br>)<br>)<br>) **DECLARATION OF**<br>) **ADAM B. WOLF**<br>) **IN SUPPORT OF**<br>) **PLAINTIFFS' REPLY**<br>) **BRIEF IN SUPPORT OF**<br>) **MOTION FOR**<br>) **ATTORNEY'S FEES**<br>)<br>)<br>) Court: Hon. Janet C. Hall<br>) Filed: August 11, 2006<br>) <u>Oral Argument Requested</u> |

I, Adam B. Wolf, hereby declare as follows:

      1.    I am a member in good standing of the bar of the State of California, and I have been admitted as a visiting attorney to the District of Connecticut for purposes of this case.

      2.    I am a Staff Attorney with the American Civil Liberties Union Drug Law Reform Project, which represents plaintiffs in this matter.

      3.    I make this declaration based on my personal knowledge and if called to testify, could and would testify as stated herein.

      4.    Throughout this litigation, as with all litigation for which I am counsel, I have attempted to minimize fees and costs. One example concerns my flight to the East coast on May 10, 2006, in order to participate in the hearing regarding plaintiffs' motion to modify the injunction. At the time the Court scheduled a hearing on this motion, I already had purchased a plane ticket to attend a conference in Utah for ACLU-employed attorneys. The

1

conference was scheduled to conclude on Wednesday, May 10, 2006, two days prior to the

Court's hearing, and the plane ticket I had originally booked for the conference would have

had me arrive home late that afternoon.  After comparing the prices of (1) booking a new

round-trip plane ticket from California to the East coast with (2) rescheduling my flight from

Utah to go to the East coast and staying an extra night at a hotel in Connecticut, I realized

that the latter option would be less expensive when also accounting for the fees that we

would charge for my travel time.  Accordingly, in order to minimize costs, I flew directly

from Utah to the East coast and stayed for two nights at the Connecticut hotel.

     5.     The following time and billing statement is true and accurate between July

28, 2006, and the filing of the reply brief in support of plaintiffs' fees motion.  It reflects

records that were kept contemporaneously with the work accomplished:

| DATE | ATTORNEY (INITIALS) | DESCRIPTION | HOURS | INJUNCTION HOURS[1] |
|---|---|---|---|---|
| 6/28/06 | AW | Finish writing and editing fees motion (4.5); format motion and send to legal assistant for TOC and further formatting (.4); receive comments to draft of motion from GB and RB, and incorp. them (.5) | 5.4 | 5.4 |
| 6/29/06 | AW | Do last round of edits to motion and ensure all documents were formatted/processed by legal assistants (2.1) | 2.1 | 2.1 |
| 8/01/06 | GB | Read Bridgeport opposition fees brief | .8 | .8 |
| 8/02/06 | AW | Read City's opposition (incl. exhibits) to our motion for fees | 1.0 | 1.0 |
| 8/03/06 | AW | Draft outline of reply brief for fees | .7 | .7 |
| 8/05/06 | AW | Research for and draft reply | 3.8 | 3.8 |

---

[1]    This column includes counsel's hours devoted toward plaintiffs' motion to modify the Court's 2001 injunction and plaintiffs' motion for attorney's fees.

Decl. of Adam B. Wolf in Supp. of Pltfs' Reply
Br. in Supp. of Mot. for Attorney's Fees

| | | brief for fees | | |
|---|---|---|---|---|
| 8/06/06 | AW | Research for and draft reply brief for fees | 3.2 | 3.2 |
| 8/07/06 | AW | Finish drafting, then edit, reply fees brief, and send to GB and RB for comments | 5.9 | 5.9 |
| 8/08/06 | GB | Review AW's draft of reply brief for fees and transmit comments to AW | .5 | .5 |
| 8/08/06 | AW | Incorp. reply brief comments from GB and RB (.8); research on WL for a few more cases for reply brief (1.1); edit reply brief (1.2) | 3.1 | 3.1 |
| 8/09/06 | AW | Edit down reply brief from 13 pages to 10 pages (1.1); citecheck reply brief (1.4); download Timeslips and get receipts for AW declaration (.4); write AW declaration for reply brief (.6); edit AW declaration for reply brief (.2); send to Justine Morgan for formatting and talk with her about formatting (e.g., need computer disk, rules on size of PDF file per instructions from clerk's office) (.2); check Justine's formatting/cert of svc/finalize and sign (.3) | 4.2 | 4.2 |

6.      The total number of hours spent by each of the attorneys whose time is logged above is as follows: Attorney Boyd: 1.3 hours; Attorney Wolf: 29.4 hours.[2]  In the exercise of billing judgment, plaintiffs will decrease, by 5.4 hours, the number of Attorney Wolf's hours for which they seek fees.  Accordingly, plaintiffs seek fees for 1.3 hours of Attorney Boyd's time and 24.0 hours for Attorney Wolf's time between June 28, 2006, and the filing of plaintiffs' reply brief.

---

[2]      Plaintiffs do not seek fees for the time that Attorney Bernhardt devoted to reading a draft of, and submitting comments about, the reply brief in support of plaintiffs' motion for fees.

Decl. of Adam B. Wolf in Supp. of Pltfs' Reply
Br. in Supp. of Mot. for Attorney's Fees

7.    I have reviewed my office's checkbook, credit-card reports, and receipts to ascertain our costs associated with litigating the fees motion since June 28, 2006. Between June 28, 2006, and the date that plaintiffs filed their reply brief in support of their fees motion, plaintiffs' counsel's office has indeed incurred costs associated with litigating the fees motion (e.g., Westlaw charges and postage fees), but, in the exercise of discretion, counsel will not seek to recover these costs.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 9th day of August 2006 in Santa Cruz, California.


_____
Adam B. Wolf

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee for the American Civil Liberties

Union Drug Law Reform Project, 1101 Pacific Avenue, Suite 333, Santa Cruz, California

95060; is a person of such age and discretion to be competent to serve papers; and that on

August 10, 2006, she served copies of the following:

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR
ATTORNEY'S FEES**

**DECLARATION OF ADAM B. WOLF IN SUPPORT OF PLAINTIFFS'
REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEY'S FEES**

by causing said copies to be placed in a prepaid envelope addressed to the person

hereinafter named, at the place and address stated below, which is the last known address,

by depositing said envelope with a mail courier at Santa Cruz, California:

Original:                                          Copy:

**Chrystine Cody, Deputy in Charge**      **Barbara Brazzel-Massaro, Esq.**
**U.S. District Court**                    **Bridgeport City Attorney's Office**
**District of Connecticut**               **999 Broad Street**
**Brien McMahon Federal Building**        **Bridgeport, CT 06604**
**915 Lafayette Blvd.**
**Bridgeport, CA 06604**

_____
Justine Morgan
Legal Assistant